RED LINE MUTUAL TELEPHONE COMPANY, APPELLEE, V.
HENRY L. PHARRIS, APPELLANT.

FILED OCTOBER 8, 1908.   No. 15,289.

1. **Contracts:** EVIDENCE. Evidence of a conversation in which one
   party states mere conclusions as to a contract is not evidence of
   the contract.

2. **Telephones:** REGULATION. The courts will not interfere with the
   proper administration of the business affairs of a litigant, but,
   when necessary, will render assistance therein.

APPEAL from the district court for Nuckolls county:
LESLIE G. HURD, JUDGE. *Affirmed.*

*F. H. Stubbs,* for appellant.

*W. F. Buck,* contra.

EPPERSON, C.

The plaintiff is a Kansas corporation, a mutual tele
phone company, with its principal place of business at
Burr Oak, Kansas, and authorized to transact business in
Nebraska. Burr Oak is about 24 miles from Superior,
Nebraska. In May, 1905, the plaintiff extended its line to
Superior, coming past the home of the defendant, six
miles west of Superior. · Prior to the construction of this
extension, the defendant and others residing along the
line subscribed for shares of stock in the plaintiff com-
pany. Before the line was completed, it became apparent
that one wire would be inadequate for the service, and, as
a result, another wire was placed along the same route
from Superior to the defendant's home. The short wire is
known as line 224, while the wire from Burr Oak to
Superior is known as line 225. When the line was con-
structed, both wires were run to the defendant's tele-
phone, where a switch belonging to defendant was in-
stalled by which the defendant was enabled to use either
wire. It is the defendant's contention that the subscrip-

tion for his share of stock, and a verbal agreement made at the time it was given, amounted to a contract whereby he was to be connected with line 225; that thereafter the plaintiff company proposed to attach only the wire known as line 224 to his telephone; that, upon his insistence that he be connected directly with line 225, the plaintiff, acting through its president, agreed to and did install the switch, and connected it with both the lines; that this was done by agreement which was substituted for the original contract. Relative to the switch, Mr. Wilsman, the then president of the plaintiff company, testified: "So far as the line switch was concerned, I agreed to put it in on my own responsibility, put it in with the understanding that I would report it to the board of directors. * * * That if they disapproved of it he, Mr. Pharris, should take it out. He said he would, or agreed to take it out, if the board disapproved." The president reported the installing of the switch to the board of directors, who disapproved of the same, and ordered it disconnected. Defendant disregarded this order, and several months later the plaintiff disconnected the wire leading from line 225 to defendant's switch. Defendant reconnected the same, and threatened to do so as often as the plaintiff would disconnect. Plaintiff thereupon instituted this action to enjoin the defendant from thus interfering with plaintiff's line. Upon trial, the district court found for the plaintiff and rendered the judgment prayed for.

The evidence shows that without defendant's connection with line 225 it is burdened to its full capacity by other telephone connections. It is also apparent that the defendant through line 224, and a switch board in Superior, is connected with all the patrons on line 225, and with other lines belonging to the plaintiff company and with the telephone exchange in the city of Superior. It is but little inconvenience to the defendant to communicate with the patrons on line 225 by calling the central office at Superior. The only difference seems to be that, if line 224 was out of order, it would be sometimes diffi-

cult or impossible to get the central office; and, further, having the switch, he could call directly to the patrons on line 225. We cannot see any particular reason why special privilege, if it may be called such, should be given to the defendant. The other patrons of the plaintiff pay the same amount as does the defendant and are connected directly with but one line.

When defendant subscribed for his share of stock, he and the officers of the plaintiff contemplated that but one wire would be run along the route. But thereafter so many persons took stock and desired connection that the other wire was necessary. The defendant's evidence is not sufficient to prove the contract he relies upon. Defendant subscribed in writing for his share of stock early in May, 1905. This contains no provision that there should be but one wire along the route, nor that he should not be required to use a central office to make connections. The evidence of the contract relied on by the defendant appears in his testimony substantially as follows: About three weeks after the stock was subscribed for, Wilsman told defendant that the line was going to be heavily loaded, and that they proposed to run another line from Superior out to the defendant's home; that defendant's neighbors east of him will go on that line, and the other people will go on the Superior-Burr Oak line. Defendant told Wilsman that that was not what he bought, and was not according to the contract; that all were to be on one wire. This is evidence of a conversation presenting defendant's conclusion as to what the contract was, but it is not evidence of the contract itself. After further talk, unnecessary to repeat, Wilsman told defendant, if he would go over on line 224, that he would put in a switch which he could use when he wanted to communicate with those connected with line 225, and that there would be no objections to the switch. Thereupon, defendant consented to the arrangement, the switch was installed, and used until about September 1, 1906. At most, the contract between the parties was that adequate means of communica-

tion with the patrons of the plaintiff company should be given to the defendant. When the switch was installed, no other satisfactory means existed which would enable him to communicate with the patrons on line 225 on account of a defective or insufficient switchboard in the central office at Superior; but thereafter a new switchboard was installed, by the use of which the defendant was given satisfactory service, and the necessity for the switch upon his own telephone is now unnecessary. The contract will not permit the defendant perpetually to maintain his switch. Conceding that the contract contemplated but one line, it is not violated by the construction of two wires along the line, even though for convenience the wires were given different names, and are connected at a central office when desired.

The demoralizing effect of the defendant's maintenance of the switch is not a matter of conjecture, but is apparent from the evidence in this case, and is stated by the witness, Mr. Keifer, now president of the company, as follows: "Tends to make the line inefficient, made hard feelings, made trouble and discord on the line. They think the defendant gets more service for his money than he is entitled to. He has the only switch on the line. Other people would clamor for switches, and destroy the whole line, if they all got switches where two lines passed their place. Other people are, in fact, waiting for switches if this switch is allowed to be maintained." The proper and businesslike affairs of the plaintiff seem to demand that defendant's switch be removed, and with plaintiff's purpose to remove it the courts will not interfere, but, necessity demanding it, will render assistance.

We recommend that the judgment of the district court be affirmed.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.