PAUL JUCKNIESS, APPELLEE, V. GLENN HOWARD, APPELLEE: J. DAN LAUER, APPELLANT.

FILED JULY 11, 1930. No. 27231.

*Stewart, Stewart & Whitworth* and *Hendricks & Kokjer,* for appellant.

*Wear, Moriarty, Garrotto & Boland, Slama & Donato, J. C. Bryant, H. A. Bryant* and *L. R. Doyle, contra.*

Heard before GOSS, C. J., DEAN, GOOD, THOMPSON and DAY, JJ., and JAMES and WRIGHT, District Judges.

WRIGHT, District Judge.

This action was brought by the appellee, Paul Juckniess, against the appellant, J. Dan Lauer, and appellee, Glenn Howard, Juckniess claiming that the concurring negligence of Howard and Lauer in the operation of their respective automobiles resulted in his damages, which he sought to recover. Howard, defendant below, whose car was being driven by his daughter, denied negligence on her part, and alleged negligence on the part of Lauer, also defendant below, resulting in damages, for which he asked judgment against Lauer. By agreement, the claims between the respective parties were submitted in the same trial, with the result that Juckniess and Howard each recovered judgment against Lauer, appellant. Juckniess' action against Howard was dismissed.

The trial lasted two days. We gather from the record that the appellant was present with his counsel during all of the first day. In the afternoon he showed erratic symptoms when he undertook to take the cross-examination of a witness from his attorney and himself assume charge. He so behaved that it became necessary for the court to admonish him, and he was told that as long as he had counsel representing him he could not, himself, examine the witness. He then subsided. That evening, when his counsel undertook to discuss with him the facts, he appeared dazed and confused and apparently could not talk connectedly. He left his counsel, with the agreement to meet at their office at 8:30 the next morning, but instead of meeting the appointment, he, without their knowledge, and apparently acting under the delusion that the case had been settled, took passage for Lincoln at 8:30, arriv-

ing shortly after 10 o'clock in the forenoon on March 6, 1929.

On the opening of court on the second day, that is, the day appellant had left for Lincoln, appellant's counsel informed the court of these facts, stating that no settlement of the case had been made or entertained; that in their opinion he was mentally incapacitated; and asked for time to make a showing for a continuance. This request being denied, the trial proceeded throughout the day. At the close of the testimony, counsel for appellant asked leave to withdraw a juror and moved that the case be continued. With this motion was submitted a showing as to appellant's mental condition. The affidavit of Dr. Thompson, who examined appellant at 10:30 in the morning of March 6, the second day of the trial, upon his arrival at Lincoln, avers that he then found him "in a highly acute nervous condition, which has so affected his mental condition as to make him irrational and irresponsible." He further states that he was then unable to say how long this condition would continue, but in his opinion he would not be competent to testify for at least thirty days.

Additional proof as to appellant's mental condition was made in support of the motion for a new trial submitted and overruled on June 14, 1929. Dr. Thompson supplemented his affidavit, already submitted, by a second affidavit, in which he said that at that time appellant's condition had improved, and "that in a few months, the exact number of which affiant cannot definitely state, said Lauer may again be rational, responsible, and competent." He further states that the disease from which appellant is suffering is not of an incurable nature.

Appellee, in resisting motion for a new trial, submitted the affidavit of Dr. Mayhew, who on the 8th day of May, 1929, about a month after the trial, saw the appellant in the hospital, "where he had been suffering from a chronic nervous disease which renders him entirely irrational and incompetent mentally." And he adds: "In my opinion never will be in a competent mental condition such as he was previous to the 1st of March, 1929."

There can be little doubt that the appellant, during the course of the trial, became at least temporarily insane, and that his absence during the second day of the trial was not voluntary but due to circumstances beyond his control.

Two assignments of error are presented: First, that the court erred in denying appellant's application for a continuance, made during the trial; and, second, that the court erred in overruling appellant's motion for a new trial.

This court, in an early case, *Johnson v. Dinsmore,* 11 Neb. 391, discussing the duty of the trial court in matters of this kind, said:

"It is said that an application for a continuance is addressed to the sound discretion of the court, and that its action thereon cannot be reviewed. But this is stating the rule too broadly. The object of the law is to administer justice, and where it clearly appears from all the facts and circumstances in the case that there has been an abuse of discretion operating to the prejudice of the party in the final determination of the case, the court, in a proper case, will grant a new trial." And later adds: "However desirable it may be to have business in court disposed of rapidly, it is of much greater importance that justice be administered, and that the court do not become the instrument for depriving a party of his rights."

There are many cases where the right to a continuance is considered solely from the position of a party unable to produce the testimony because of the absence of a witness. Under ordinary circumstances this testimony can be supplied, in a measure, at least, by admissions as to the testimony of such absent witness, and that is generally deemed sufficient. The trial court evidently viewed this case from that standpoint, and announced that a continuance would be granted unless such admissions were made. The admissions having been made, the motion for a continuance was overruled.

Another situation, however, arises when the absent person is a party to the litigation, as in this case. Here the litigant has been deprived, not only of his right to testify in person, which might be supplied by the admissions, but

also of the important right to be present and advise with his counsel during the course of the trial. In *Horr v. Easton,* 114 Neb. 829, this court held that where, before the time set for the trial, a defendant becomes ill and is unable to attend court at the time fixed therefor, and that fact is established by his own affidavit, that of his counsel and his attending physician, ordinarily it is error for the trial court to proceed to trial in the absence of such defendant, and quote with approval from *In Re Townsend's Estate,* 122 Ia. 246, as follows:

"Her counsel were entitled to her presence, counsel and advice during the entire trial. The evidence discloses that she knew more about the real issues than any one else, and, while she may have been incompetent as a witness to testify to many of these matters, there was the more need for her advice and counsel during the trial."

Further, in support of the rule in the same case, this court adopted so much of the opinion in *Mathews v. Willoughby,* 85 Ga. 289, where it is said:

"A continuance should have been granted on motion properly showing, on the call of the case, that the defendant was sick with pneumonia and would be unable to attend court for five or six days, in connection with his counsel's statement that he could not go to trial without the presence of his client; the only counter showing being to the effect that the defendant was seen two days before, going from his home."

In *Jaffe v. Lilienthal,* 101 Cal. 175, that court, in passing upon a similar question, said:

"It seldom happens that a trial can be properly had in the absence of the plaintiff, even when he is disqualified as a witness, especially where it is to be tried upon oral testimony. With all the care that can be reasonably taken by both attorney and client, some matter of vital importance is liable to be overlooked by them until the trial calls it to the recollection of the plaintiff, and this is especially true in relation to matters purely in rebuttal. It is the right of parties to be present at the trial of their cases. This right may be waived, and should be held to be waived

where the absence of the party is voluntary and under circumstances which ought not to induce a reasonable man having a due regard for the rights and interests of others and of the public, all of whom are interested in the due and prompt administration of justice, to absent himself."

In *McMahan v. Norick,* 12 Okla. 125, it is said:

"It is true that the defendant in error consented that the affidavit of the plaintiff in error may be treated as her deposition, but this fact did not satisfy the law. The plaintiff in error had a right to be present when she was able to attend court, and not only testify in her own behalf, but to assist counsel in the presentation of said cause."

Many cases may be found sustaining a refusal of a continuance in the case of the absence of one of the parties where such absence is either voluntary or due to negligence. The justice of the rule is apparent. But in the present case, where the defendant had, during the course of the trial, through an unforseen calamity and through no fault of his own, been deprived of the right to be present and participate, it became the duty of the court to protect him by granting the continuance asked, and a failure so to do, upon application of counsel, amounted to an abuse of discretion. Having denied the continuance, the motion for a new trial, made later, should have been sustained.

There is another view of the case which should be taken into consideration under the facts shown. The trial proceeded to judgment against a defendent mentally incompetent. In *Simmons v. Kelsey,* 72 Neb. 534, where the question of the rights of an incompetent person, a party to litigation before the court, were involved, this court said:

"If before the termination of the litigation she shall become incapacitated, a duty will devolve upon the court, as the general conservator of the estates of all persons under disabilities, to see to it that her rights and estate are protected and preserved, either by a general guardian or by a next friend or guardian *ad litem* appointed by the court for the purposes of the action."

And in the case of *Graves v. Graves,* 255 Mo. 468, that court said:

"If no guardian *ad litem* was appointed, then the lunatic never had his day in court in the full sense of the term."

In the present case, the appearance by attorneys appointed during the sanity of the party would not be sufficient. It is a general rule that, where a principal becomes insane or otherwise mentally incapacitated before the agent has performed his undertaking, then the agency would be at least suspended by operation of law. Where such a situation is presented to a court, as was in this case, by the motion for a new trial, the judgment obtained under such circumstances should not be permitted to stand.

For the reasons stated, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.