FRANCISCO J. GUTIERREZ, APPELLEE,
V. ZENAIDA GUTIERREZ, APPELLANT.
557 N.W.2d 44

Filed December 17, 1996.   No. A-95-708.

Marsha L. Babcock and Bernard J. Glaser, Jr., for appellant.

Thomas R. Lamb, of Anderson, Creager & Wittstruck, P.C., for appellee.

Miller-Lerman, Chief Judge, and Hannon and Mues, Judges.

Mues, Judge.

## I. INTRODUCTION

Zenaida Gutierrez appeals from a judgment granting her ex-husband, Francisco J. Gutierrez, credit for payment of a property settlement judgment and ordering that the judgment lien against Francisco be released.

## II. STATEMENT OF CASE

Francisco and Zenaida were divorced by decree on June 1, 1990. Prior to entry of this decree, a guardian ad litem was appointed on behalf of Zenaida as she was reportedly unable to adequately assist her attorney or understand the nature of the legal proceedings. The decree approved the parties' property settlement agreement and ordered three of the parties' rental properties to be sold as soon as practicable. After payment of outstanding mortgages and costs of sale, Zenaida was to receive the first $10,000, with the remaining proceeds to be applied to several debts specified in the decree. Portions of the decree will be set forth later as necessary.

On June 4, 1993, Francisco filed a "Petition for Credit and Release of Lien & Praecipe," in which he requested full credit for the decree obligations and release of judgment. The petition alleged that of the three properties ordered to be sold, one was unsalable due to deterioration; Francisco had to pay $850 to close the sale of the second property, and the parties netted $7,021 from the sale of the third. The petition further alleged that the parties agreed that Francisco was to use the $7,021 to pay the debts at Sears, Roebuck and Co. and Montgomery Ward & Co.; Zenaida was to receive the remainder of the $7,021; and Zenaida was to release Francisco from his obligation under the decree and grant him credit for the full $10,000 judgment.

A demurrer was filed July 8, 1993. Although the record contains no written order, comments from the trial judge indicate that a demurrer was overruled on August 13. On October 26, Zenaida filed an answer denying the allegations and a cross-

petition, in which she sought alimony. A motion to continue was filed April 12, 1994, and Zenaida's attorney filed a motion to withdraw on April 15. This request to withdraw was granted by journal entry on May 16.

The matter came on for hearing on June 1, 1994. Zenaida requested another continuance, which was denied. Zenaida then orally moved to dismiss for lack of subject matter jurisdiction. This motion was overruled.

Francisco was then called to testify on his own behalf. He testified as to the condition of the properties and further stated that since the time of the decree, Zenaida had received nearly all of the rent from the properties while he had made all of the mortgage payments and necessary repairs. Francisco further testified that the sale of only one of the properties resulted in a profit to the parties and that this amount was $7,021. Francisco also attested as to the alleged oral agreements between the parties. This testimony will be set out in more detail in the discussion portion of this opinion. Finally, Francisco testified regarding the amounts owed and paid to Sears and Wards. Three real estate agents then testified regarding the properties sold, and Francisco rested. Zenaida's renewed motion to dismiss for lack of subject matter jurisdiction and motion for insufficient evidence were overruled. Zenaida's motion to dismiss her cross-appeal without prejudice was granted.

Called as witnesses on behalf of Zenaida were Francisco's current wife, who denied forging Zenaida's name on the cashed check for $7,021; Zenaida's former attorney, Sandra Hernandez Frantz, who denied being present during a conversation in which Zenaida agreed to give Francisco full credit for the $10,000; and the parties' daughter, who testified that the signature on the cashed check was not her mother's. Last, Zenaida testified, denying any oral agreement between the parties and also denying that it was her signature on the cashed check. She then rested. The matter was continued to allow rebuttal testimony and was set for August 12, 1994.

On August 5, on Zenaida's motion, the court appointed a guardian ad litem and continued the matter. On December 9, on the guardian ad litem's motion, the hearing rescheduled for December 16 was continued so that a psychological evaluation

could be done on Zenaida. The trial was reset for February 16, 1995. This evaluation was admitted into evidence at a pretrial conference held February 2. At that hearing, Zenaida was found incompetent to participate further in the proceedings. Francisco's attorney moved to strike testimony elicited from Zenaida at the June 1, 1994, hearing based on her incompetency. The court took the matter under advisement and advised the parties that a continuance of the February 16, 1995, hearing was unlikely.

On February 16, the court advised it had sustained Francisco's motion to strike Zenaida's testimony. The court denied Zenaida's followup oral motion to strike from the June 1, 1994, hearing, statements or conduct of Zenaida since the time of the decree. Zenaida then orally moved for another continuance until she could testify regarding the alleged agreement. This request was overruled. She then moved for a mistrial, which was also denied. At this hearing, Francisco testified as a rebuttal witness and Zenaida called one additional witness on surrebuttal. At the close of all of the evidence, Zenaida proceeded to renew all of her motions, which were again overruled.

On May 30, 1995, the district court, after finding the allegations contained in Francisco's petition generally true, granted Francisco credit for payment of the $10,000 property settlement judgment and released the judgment lien against him.

### III. ASSIGNMENTS OF ERROR

Zenaida's assignments of error can be consolidated as asserting that the trial court erred in (1) overruling her demurrer and her motion to dismiss as this action constitutes an invalid request to modify the property settlement portion of the parties' dissolution decree; (2) overruling her June 1, 1994, motion to continue to give her new counsel sufficient time to prepare for the hearing; (3) overruling her motion for a mistrial upon finding her incompetent and striking her testimony, because such was an abuse of discretion and violated her right to due process of law; (4) overruling her motion to dismiss based on insufficient evidence because of her stricken testimony; and (5) granting Francisco credit for $10,000, which was not supported by the evidence.

## IV. STANDARD OF REVIEW

■ Regarding matters of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *State v. Orduna*, 250 Neb. 602, 550 N.W.2d 356 (1996). See *Berggren v. Grand Island Accessories*, 249 Neb. 789, 545 N.W.2d 727 (1996).

■ In equity actions, an appellate court reviews the factual findings de novo on the record and reaches a conclusion independent of that of the trial court. *Latenser v. Intercessors of the Lamb, Inc.*, 250 Neb. 789, 553 N.W.2d 458 (1996).

■ A motion for continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal absent an abuse of discretion. *Adrian v. Adrian*, 249 Neb. 53, 541 N.W.2d 388 (1995). Likewise, a trial court's decision on a motion for mistrial will not be disturbed on appeal absent an abuse of discretion. *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993). An abuse of discretion means that the reasons for the ruling are untenable and unfairly deprive a litigant of a substantial right and deny a just result in the matter submitted for disposition. *State v. Severin*, 250 Neb. 841, 553 N.W.2d 452 (1996).

## V. DISCUSSION

### 1. MOTIONS FOR CONTINUANCE AND MISTRIAL

Zenaida's second and third assignments of error are directed to prejudice caused to Zenaida when the hearings proceeded on June 1, 1994, despite her request for a continuance and on February 16, 1995, despite her request for a mistrial. According to her, the court's denial of her June 1, 1994, motion for continuance denied her new counsel sufficient time to prepare for the June 1 hearing or to familiarize himself with Zenaida's mental condition. Similarly, she claims the court, once aware of Zenaida's incapacity to testify and having stricken her testimony, should have granted her motion for a mistrial to allow her to regain her competency, start anew, and present testimony as to her incapacity to agree to the matters as alleged by Francisco. We find Zenaida's arguments to be without merit.

### (a) June 1 Continuance

First, we address Zenaida's motion for continuance of June 1, 1994. Zenaida's sole basis for said motion was that her attorney had been very recently retained and unable to properly prepare. She argues that the prejudice is obvious because he put her on the stand when it was later determined she was mentally incompetent to testify. At the outset, we note that an application for a continuance must be in writing and supported by an affidavit which contains factual allegations demonstrating good cause or sufficient reason necessitating postponement of the proceedings. Neb. Rev. Stat. § 25-1148 (Reissue 1995); *Stewart v. Amigo's Restaurant*, 240 Neb. 53, 480 N.W.2d 211 (1992); *Williams v. Gould, Inc.*, 232 Neb. 862, 443 N.W.2d 577 (1989). An oral request is not sufficient to comply with this requirement. See *Fredericks v. Western Livestock Auction Co.*, 225 Neb. 211, 403 N.W.2d 377 (1987). No written request or affidavit is found in the record. The only ground asserted as of June 1, 1994, was that Zenaida's counsel had just been retained. A motion for continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal absent an abuse of discretion. *Adrian, supra.*

Francisco's petition was filed June 4, 1993. Zenaida's first attorney withdrew, and another attorney appeared and filed an answer out of time on October 26. A motion for a continuance filed April 12, 1994, was allowed based upon the second attorney's April 15 motion to withdraw. According to the court's docket notes of May 16, this attorney was directed to notify Zenaida that trial "remains set for 5-31-94 trial panel." Based on the record and the facts obtained at that time, we cannot say that the denial of this continuance was an abuse of discretion.

### (b) Motion for Mistrial

Regarding her motion for a mistrial made at the commencement of the February 16 final hearing, Zenaida argues that its denial was an abuse of discretion which operated to deny her due process of law.

A motion for mistrial is directed to the discretion of the trial court and its ruling will not be disturbed on appeal absent an abuse of that discretion. *Nichols v. Busse*, 243 Neb. 811, 503

N.W.2d 173 (1993). A mistrial is appropriate when an event occurs during the course of a trial which is of such a nature that its damaging effects would prevent a fair trial. *State v. Groves*, 239 Neb. 660, 477 N.W.2d 789 (1991). Egregiously prejudicial statements of counsel, the improper admission of prejudicial evidence, and the introduction of incompetent matters provide examples of events which may require the granting of a mistrial. *Id.* A motion for mistrial should be made at the first reasonable opportunity. If not timely made, it is waived. *Nichols, supra.* Failure to make a timely objection waives the right to assert prejudicial error on appeal. *Id.* In addition to being timely, a motion for mistrial must be premised upon actual prejudice, not the mere possibility of prejudice. *Groves, supra.*

In essence, it is Zenaida's position that the court should have declared a mistrial after it struck her testimony from the June 1, 1994, hearing upon a finding that she was not competent to participate in further proceedings. Before addressing this, however, we note that Zenaida does not assign as error the February 2, 1995, finding of her incompetency to participate in further proceedings, the striking of her testimony from the June 1 hearing, the denial of her motion to strike her postdecree statements and conduct, or the denial of her February 16, 1995, motion for continuance. We also note that at no time did Zenaida seek to reopen her June 1 rest to offer additional testimony in opposition to Francisco's petition, nor did she seek to amend the answer which she filed in October 1993 to add an allegation of her incapacity to contract.

Zenaida's behavior at the June 1, 1994, hearing was, according to her counsel, suspect. Her August 5 motion to appoint a guardian ad litem was so "such person [could] conduct an independent investigation to assure that the welfare and interests of [Zenaida] are protected." The guardian ad litem's motion for continuance sought a psychological evaluation of Zenaida "for the purpose of providing an assessment as to her cognitive functioning and mental capacity to meaningfully participate in the pending litigation . . . and specifically to address whether Zenaida . . . has the sustained ability to adequately assist her attorney and to understand the nature of these legal proceedings."

On February 2, 1995, a psychological evaluation of Zenaida conducted by Joseph S. Swoboda, Ph.D., a licensed and certified psychologist, was received in evidence. Its stated purpose was "to ascertain [Zenaida's] mental condition in relation to *upcoming* legal proceedings, specifically relating to [Zenaida's] *current* mental capacity and cognitive functioning, i.e. her ability to assist her attorney in preparing for court and her ability to competently testify as a material witness in a pending case." (Emphasis supplied.) When asked about her testimony, the report stated that Zenaida had "declared it all to be 'nonsense' and could not recall what her testimony was . . . ." With regard to medications, Swoboda reported that Zenaida "acknowledged that she has overused them in the past, referencing a time when she was in court last August [sic] where she overtook some of her Amitriptyline and stated she spent much of the time on the stand 'in a fog.'" Swoboda's diagnosis was that Zenaida experiences several personality disorders of some sort with histrionic and dependent features and that under extreme emotional duress, she experiences severe thought disintegration, deluded ideation, problems with memory and concentration, and excessive emotional reactivity. Swoboda concluded Zenaida was capable of functioning marginally on a daily basis and appears to have "adequate intellective functioning," but she was "not *currently* competent to undertake court proceedings, nor to make an active effort in working with her attorney on her own behalf. It seems apparent that she has disorganized thinking and behaviors sufficient to preclude her being a witness in a court proceeding *at the present time* also." (Emphasis supplied.) Finally, Swoboda opined that given her levels of disorganization, the prognosis for Zenaida's response to treatment was "poor to guarded" and due to her inconsistency in attending treatment sessions, it was his prognosis that "treatment effects would at best have marginal impact."

On February 2, 1995, the court determined that Zenaida was not capable of participating in further proceedings. Francisco's motion to strike Zenaida's June 1, 1994, testimony was eventually sustained. On February 16, 1995, Zenaida moved to strike from the evidence any statement or conduct made by her since the date of the decree of dissolution on the basis that Zenaida

was not competent during that timeframe. This motion was overruled. Zenaida's motion to continue the matter until she regained competency to act as a witness and to assist in her case was also overruled. Her motion for a mistrial was similarly overruled.

Several things are apparent from this history. First, there can be little question that Zenaida's mental stability was suspect as of August 5, 1994. Four months passed. The December 12 continuance was granted for the very purpose of a psychological evaluation, with her mental capacity being an open and obvious concern to all. Another 1½ months passed. On February 2, 1995, at the "pretrial conference," Zenaida's mental instability, at least as far back as the June 1, 1994, hearing, was clear. While her mental capacity preceding June 1 was not specifically addressed in Swoboda's report, the district court file reflected that a guardian ad litem had been appointed in the original divorce proceedings. No motion for mistrial was made until February 16, 1995, over 6 months after the obvious simply became more obvious and far later than the first reasonable opportunity to do so.

More important, we fail to see how Zenaida was prejudiced by the denial of this motion. The basis for Zenaida's motion is that she is entitled to start anew because the striking of her testimony eradicated all evidence which could have been offered to challenge Francisco's version of the agreement on the distribution of these sales proceeds. This is not entirely true. Zenaida's daughter testified that the check did not bear her mother's signature and was, by inference, forged; Zenaida's former attorney also disputed Francisco's claim that an agreement was reached between him and Zenaida in her presence. Moreover, the Nebraska Supreme Court has noted that while a party to a civil action ordinarily has the right to attend trial, the party's inability to attend does not necessarily require a continuance of the matter. *Jordan v. Butler*, 182 Neb. 626, 156 N.W.2d 778 (1968) (court did not abuse discretion in denying continuance even though party absent due to illness where no prejudice occurred). If such a situation should arise, an application showing that the party is a material witness and a recitation of the material facts the party would attest to is required. *Id.* Compare

*Juckniess v. Howard*, 120 Neb. 213, 231 N.W. 843 (1930) (party has right to be present and participate in proceedings even if incompetent to testify; therefore, court erred in denying continuance). Unlike *Juckniess*, however, in which the party's inability to participate in the proceedings was unforeseen, the timeliness here shows that Zenaida's representatives anticipated a problem and had adequate time to deal with the potential unavailability of Zenaida's testimony.

Zenaida also asserts prejudice in that she was given no opportunity to raise the "real" defense of her incompetency. However, the record discloses no impediment between August 5, 1994, and February 16, 1995, to Zenaida's developing evidence on the issue of her mental capacity in February 1992, the timeframe of the agreements as testified to by Francisco. No attempt was made to offer any such evidence at any point. Contrary to Zenaida's contentions, the evidence offered does not address Zenaida's mental situation during that timeframe. Swoboda's report addresses only Zenaida's testimony at the June 1 hearing and his opinion as to her *current* (as of the date of his report—January 1995) ability to participate and to testify. It did not address her mental state between the date of the final decree hearing in April 1990 and the June 1, 1994, hearing.

Some 8½ months passed from June 1, 1994, to February 16, 1995. For at least 6 of those 8½ months, Zenaida's mental capacity was at the forefront of the delays in this litigation. During those 6 months, a guardian ad litem was in place to guard, protect, and further her interests. Zenaida was not denied the opportunity to raise the defense of incapacity to contract.

We agree that Zenaida's ability to present her own testimony was precluded by the unique circumstances of this case. Yet, at most, a mistrial would have delayed resolution to an indefinite future time. As Swoboda's report discloses, the future looks no brighter for Zenaida's mental ability to testify than does the present. Moreover, Zenaida's regaining of her mental capacity to testify would in no way assure her competency to then relate events which occurred during a time when she was allegedly incompetent. Indeed, the contrary appears to be the case. Zenaida's argument ignores the fact that her current incapacity to testify did not preclude her from proving incapacity to con-

tract during the relevant time periods. Logic suggests that such incapacity is more often proved through observation and opinion of third persons than through the testimony of the one whose capacity is questioned. Zenaida was not denied the opportunity to offer such evidence to challenge her mental capacity at the time of these alleged agreements.

Faced with a difficult issue, the district court denied the motion for mistrial and moved forward to resolve a matter then pending for nearly 20 months. Because the motion was untimely and because Zenaida has failed to convince us that the denial of it was an abuse of discretion, we find no merit in this assignment of error.

### 2. Court's Authority to Decide Dispute

In her first assignment of error, Zenaida essentially argues that the trial court erred in allowing this case to proceed as Francisco's petition for credit constitutes an invalid request to modify a property settlement provision of the parties' dissolution decree. In sum, Zenaida claims that the trial court should have dismissed this action because it had no authority to grant the relief sought.

Neb. Rev. Stat. § 25-2210 (Reissue 1995) provides in relevant part: "Whenever any judgment is paid and discharged, the clerk shall enter such fact upon the judgment record in a column provided for that purpose." Referring thereto, the Nebraska Supreme Court has long stated: " 'The district court may, on motion and satisfactory proof that a judgment had been fully paid or satisfied by the act of the parties thereto, order it discharged and canceled of record.' " *Hopwood v. Hopwood*, 169 Neb. 760, 761, 100 N.W.2d 833, 834 (1960) (citing *Manker v. Sine*, 47 Neb. 736, 66 N.W. 840 (1896)). See, also, *Berg v. Berg*, 238 Neb. 527, 471 N.W.2d 435 (1991); *Scott v. Scott*, 223 Neb. 354, 389 N.W.2d 567 (1986); *Cotton v. Cotton*, 222 Neb. 306, 383 N.W.2d 739 (1986).

Referring to the "inherent power of a court to determine the status of its judgments," the court in *Cotton*, 222 Neb. at 306-07, 383 N.W.2d at 740, granted the respondent credits against a judgment for alimony and child support as a result of payments he made directly to the petitioner, rather than, as required by the

decree, through the clerk of the court. Similarly, in *Berg, supra*, the Supreme Court affirmed a decision granting a father credit against child support arrearages where the evidence established that two of the children for whom the father was ordered to pay support lived with him for a definite period of time, during which he directly provided for their full support. In both *Cotton, supra*, and *Berg, supra*, the Supreme Court rejected the argument that by granting a credit, it was modifying a previous order of the court. See, also, *Hopwood, supra*.

Likewise, we do not view Francisco's motion as seeking a modification of the decree. Rather, it seeks to prove that the judgment had been fully satisfied. Consequently, the court did not err by allowing the case to proceed. However, Zenaida's argument that the *effect* of the trial court's order was to modify the decree merits discussion.

According to Zenaida, the trial court effectively modified the terms of the dissolution decree in two respects. First, she claims the trial court's order reduced the amount of Zenaida's "lien" to less than $10,000. Second, she contends the trial court's order changed the priority of the obligations to be paid from the realty sale proceeds. In support of her argument that the court's decision constitutes a modification, Zenaida cites *Mays v. Mays*, 229 Neb. 674, 428 N.W.2d 618 (1988), and *Meisinger v. Meisinger*, 230 Neb. 37, 429 N.W.2d 721 (1988). In both of these cases, the Supreme Court stated that a trial court lacks the authority to modify, during contempt proceedings, the terms of an earlier order for support or division of property. See, also, *Neujahr v. Neujahr*, 218 Neb. 585, 357 N.W.2d 219 (1984). *Mays* and *Meisinger* are distinguishable. First, this action was not a contempt proceeding. Second, the trial court did not modify the terms of the decree. Our discussion requires us to determine what the decree means.

To determine the amount due under the decree, we must look to the decree itself. As previously set forth, the decree approved the terms of the parties' property settlement agreement and specifically ordered that three of the parties' rental properties be sold as soon as practicable. The decree then provided:

> The net proceeds from the sale of the rental properties listed above, after payment of the expenses of sale of said

properties, and any mortgage amounts against said properties, shall be applied as follows:

a. Respondent shall receive as property settlement, and not as alimony, the sum of Ten Thousand Dollars ($10,000.00);

b. The payment of any remaining mortgage amounts due at the Goodyear Employee's Credit Union, which sums represent mortgages covering any of the properties of the parties;

c. To the payment of any capital gains tax due as a result of the sale of the properties;

d. To payment of the joint obligation of the parties at FirsTier Bank;

e. To the payment of the joint obligation of the parties to Montgomery. Ward and Company;

f. To the payment of the joint obligation of the parties to Sears, Roebuck and Company[.]

The decree also provided:

[P]ending sale of the rental properties of the parties, the financial obligation of the parties shall remain in tact, and the mortgage amounts due to the Goodyear Employee's Credit Union shall continue to be paid by [Francisco] provided, however, that the parties are ordered to cooperate fully with one another to list the rental properties for sale, and to use every effort to sell the properties.

In interpreting the terms of a decree, the Nebraska Supreme Court has stated:

[T]he fact is that neither what the parties thought the judge meant nor what the judge thought he or she meant, after time for appeal has passed, is of any relevance. What the decree, as it became final, means as a matter of law as determined from the four corners of the decree is what is relevant.

*Neujahr v. Neujahr*, 223 Neb. 722, 728, 393 N.W.2d 47, 50-51 (1986).

It is clear that the decree anticipated that Zenaida's $10,000 payment was dependent upon the realty proceeds. The decree does not provide what is to occur if the realty proceeds are insufficient to pay the items listed. The only reasonable inter-

pretation of the decree is that Zenaida was to receive up to $10,000 of proceeds remaining after payment of "expenses of sale . . . and any mortgage amounts against said properties" with the remaining obligations to be paid in the order that they appear in the decree, to the extent the remaining proceeds, if any, allowed it.

Therefore, Zenaida's argument that approving her receipt of anything less than $10,000 as satisfaction of her judgment worked a modification of the decree is without merit. The decree did not guarantee her a judgment of $10,000.

■ Next, Zenaida contends that the trial court modified the terms of the decree by approving Francisco's use of proceeds to pay creditors of lower priority in the decree than Zenaida, i.e., Sears and Wards, creditors listed as items e and f. We disagree. The trial court's order was based on a finding that there was an oral agreement made between the parties in which both agreed to something different than that provided in the decree.

> The general aspect of a decree or judgment represents a right on the one hand and an obligation to respond on the other. Responses may be made agreeable to the terms of the decree or judgment but this is not exclusive. If the holder of the right is willing to and does accept something different he may do so. . . .
>
> It is well established by reported cases in numerous jurisdictions that a judgment debtor or debtor under a decree in equity may satisfy the obligation of such judgment or decree by performance of an agreement to satisfy in some manner other than that provided for by the judgment or decree.

*Powell v. Van Donselaar*, 162 Neb. 96, 98, 75 N.W.2d 105, 106 (1956). In *Powell*, the plaintiff filed suit alleging that the defendant had failed to comply with the court's decree. The defendant responded that he had performed in accordance with an oral agreement reached by the parties which varied the requirements of the decree. Pursuant to a local court rule requiring that all stipulations be in writing or in open court, the trial court disallowed all evidence pertaining to the existence of this oral agreement. The Nebraska Supreme Court found that the omission of such evidence was error.

Francisco's petition sought to prove that the parties had agreed to, and Francisco had performed, something other than that required by the decree. The order of the court found such an agreement. Zenaida's argument that the court was without authority to enter an order based upon such a finding is without merit.

### 3. SUFFICIENCY OF EVIDENCE

In her fourth and fifth assignments of error, Zenaida attacks the sufficiency of the evidence to support the court's order. We have already determined that the court was not required to find that Zenaida received a sum no less than $10,000 in order to release Francisco from this judgment. As to the court's factual findings, both parties agree that our standard of review in this case is de novo on the record. See, also, *Cotton v. Cotton*, 222 Neb. 306, 383 N.W.2d 739 (1986); *Hopwood v. Hopwood*, 169 Neb. 760, 100 N.W.2d 833 (1960); *Knaack v. Brown*, 115 Neb. 260, 212 N.W. 431 (1927).

Our de novo review of the record leads us to conclude that the district court's finding that Francisco and Zenaida agreed to use the realty proceeds to pay Sears and Wards first was not an abuse of discretion. Francisco testified that Zenaida telephoned him shortly after closing and told him that she could not afford to pay these two creditors. According to Francisco, Zenaida asked him to use the $7,021 to pay Sears and Wards. He did this and gave the remaining money, approximately $744, to Zenaida. Thus, we agree with the trial court that Zenaida agreed to use a portion of the $7,021 to pay Sears and Wards.

However, we disagree with the trial court that Zenaida agreed to fully release Francisco from his obligation to pay her any further under the decree. Francisco admits that the parties did not discuss the sums owed to Zenaida under the decree in the aforementioned conversation. Rather, Francisco testified that the $10,000 was discussed in a meeting attended by himself, Zenaida, and her then attorney, Frantz, some time after July 1992. However, when asked specifically if Zenaida said anything about the $7,000 being in lieu of the $10,000, Francisco testified, "I don't remember — be truthful."

However, Frantz testified that she was never present during a conversation with Francisco and Zenaida in which Zenaida agreed to give Francisco full credit for the $10,000 and a receipt representing satisfaction of the same. Rather, she testified that Francisco told her that he had agreed to pay off some debts and that he now wanted credit for the $10,000 as a result. Francisco reaffirmed on rebuttal that an agreement was reached between himself, Zenaida, and Frantz that the money as applied would be in satisfaction of the $10,000 judgment.

We find the evidence insufficient to establish that an agreement to release was ever made. Francisco's testimony on June 1, 1994, does not even attempt to establish that Zenaida agreed to provide a receipt or release in exchange for payment of the debts and the $700 to her. Francisco merely testified that the parties agreed that the $10,000 payment was to come from the realty proceeds. That is clear from the decree itself without agreement of the parties. An agreement requires a meeting of the minds. See *Hoeft v. Five Points Bank*, 248 Neb. 772, 539 N.W.2d 637 (1995). Addressing oral contracts, the Supreme Court has noted that the assertion of such " ' "should be regarded by the court with grave suspicion, and the establishment thereof required by evidence which clearly indicates the minds of the parties met upon the terms of the contract sought to be established." ' " *Yates v. Grosh*, 213 Neb. 164, 167, 328 N.W.2d 200, 202 (1982). Moreover, evidence of a conversation in which one party states mere conclusions as to a contract is not evidence of the contract. *Red Line Mutual Telephone Co. v. Pharris*, 82 Neb. 371, 117 N.W. 995 (1908). Francisco failed to prove the existence of an agreement in which he was to be fully released from his obligations under the decree by virtue of his paying Sears and Wards in full from the realty proceeds and giving Zenaida the remaining balance.

This does not mean that the trial court's grant to Francisco of some credit was an abuse of discretion. As set forth above, we believe the evidence supports a finding that Zenaida knew that the $7,021 was realty proceeds and that she requested that Sears and Wards be paid first, notwithstanding the terms of the decree. Apparently, Sears was paid $3,804, while Wards received $2,073. There is no evidence as to *when* these debts

were incurred, although it is evident from the decree that they existed, in some amount, at the time of the decree. The decree provides, somewhat unconventionally, that the parties' financial obligations would remain "intact" pending sale of the properties. We interpret the decree to mean that the financial obligations of the parties *existing at the time of the decree* would continue as they were, including the joint obligation to Sears and Wards.

The decree does not address postdecree obligations, which naturally would be the sole responsibility of the party incurring them. Moreover, the evidence does not disclose what portion of these debts, if any, was incurred postdecree. It was Francisco's burden, as the moving party, to prove such matters. Indeed, Francisco's testimony seems to conclude that he and Zenaida were jointly, and thus equally, liable for the Sears and Wards debts as of the date he paid them. Therefore, we treat them as such.

Thus, the payment resulted in each party's obligation on the joint debts being paid in full, each benefiting in the amount of half of the combined debt. Zenaida received the remaining $744 in cash. Thus, Zenaida received the benefit, at her request, of $3,683 of the real estate proceeds. Francisco should be credited for that amount. Accordingly, in order to satisfy the decree, Francisco owes Zenaida $3,338, the difference between $7,021 and $3,683.

## VI. CONCLUSION

Francisco is entitled to a credit of $3,683. He continues to owe Zenaida, pursuant to the parties' dissolution decree, $3,338. These findings do not constitute an improper modification of the decree of dissolution. Further, the trial court did not err in denying Zenaida's motion for a continuance or her motion for a mistrial.

AFFIRMED AS MODIFIED.