VIRGINIA A. DENNIS, APPELLEE,
v. GREGORY S. DENNIS, APPELLANT.
574 N.W. 2d 189

Filed February 10, 1998.   No. A-96-987.

Steven M. Delaney, of Hascall, Jungers, Garvey & Delaney, for appellant.

Kelly K. Brandon, of Sodoro, Daly, & Sodoro, for appellee.

MILLER-LERMAN, Chief Judge, and IRWIN and MUES, Judges.

MUES, Judge.

## BACKGROUND

Gregory S. Dennis and Virginia A. Dennis were divorced by decree December 19, 1988. As part of the decree, the court awarded Virginia the family residence and ordered her to pay a loan secured by a first mortgage on that residence. The court ordered Gregory to pay and hold Virginia harmless from a $25,000 home equity loan from First National Bank of Bellevue (FNB).

Gregory failed to make the FNB payments on the home equity loan, which was secured by a deed of trust (the parties refer to this deed of trust as the "second mortgage," and for convenience, we will do the same), and foreclosure proceedings were initiated. In June 1990, Virginia filed a motion asking the

court to order Gregory to appear and show cause why he should not be held in contempt for failing to comply with the terms of the divorce decree. The court ordered Gregory to appear and in August found that he was in willful contempt for failing to pay the second mortgage. The court ordered Gregory to serve 30 days in the county jail but suspended the sentence conditioned upon Gregory's making payments to FNB.

According to Virginia, Gregory did not make the required payments, and a sheriff's sale was scheduled for October 1990. According to Gregory, just a few days prior to the sale, Virginia's father, John Ransom, and Gregory reached some sort of arrangement whereby Gregory paid $3,000, which was to be applied toward the FNB debt then due on the house. The evidence reflects that the bank was paid $18,000 and gave Ransom an assignment of the bank's mortgage. The remaining $8,310.05 owing was charged off by the bank. Gregory testified that the arrangement with Ransom was that Gregory would pay as much of the debt as he could and that Ransom would pay the rest. According to Gregory, Ransom never informed him that he was going to take an assignment of the second mortgage on the house, and Gregory had heard nothing about the FNB debt after that until Virginia filed the present proceeding. Virginia did not participate in the discussions between Gregory and Ransom and was unaware of any agreement that they may have made. Ransom was not a party to these proceedings and was not called as a witness by either party.

In April 1996, Virginia filed an application to modify the December 1988 decree of dissolution. Virginia alleged, inter alia, that in order to prevent foreclosure of her and the parties' children's home, she borrowed money from Ransom to pay off the second mortgage. Virginia prayed that the court order Gregory to pay her the amount she had to pay FNB to satisfy the second mortgage and serve the deferred 30-day jail sentence ordered in 1990. The court canceled the suspended jail sentence and ordered a hearing to determine the amounts due under the decree. In its order of August 28, 1996, the court ordered, inter alia, that Gregory pay Virginia $15,000, due to his failure to satisfy the entire obligation to FNB. Gregory timely appeals from this judgment.

## ASSIGNMENT OF ERROR

Gregory's sole assignment of error is that the trial court erred in awarding Virginia a judgment of $15,000 upon finding that he had failed to satisfy his obligation to pay the FNB debt as ordered by the decree of dissolution.

## STANDARD OF REVIEW

After the time for appeal has passed, the meaning of a dissolution decree is determined as a matter of law from its language; neither what the parties thought the decree meant nor what the judge intended is of any relevance. *Universal Assurors Life Ins. Co. v. Hohnstein*, 243 Neb. 359, 500 N.W.2d 811 (1993).

In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court. However, where credible evidence is in conflict on a material issue of fact, the appellate court will consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Hanigan v. Trumble*, 252 Neb. 376, 562 N.W.2d 526 (1997).

## DISCUSSION

The decree of December 19, 1988, provides in pertinent part: "The Respondent [Gregory] should pay and hold harmless the Petitioner [Virginia] from the home equity loan from First National Bank of Bellevue." There is no dispute that the FNB debt which led to the foreclosure proceedings and which was eventually paid off with the $3,000 from Gregory and the $15,000 from Ransom was, in fact, the home equity loan referred to in that portion of the decree. There is also no dispute that the foreclosure proceedings resulted from Gregory's failure to make the required payments on that home equity loan.

Virginia's most recent application to modify alleged, inter alia, that to prevent the foreclosure by FNB she borrowed money from Ransom to help pay the FNB debt. Since the relief she sought, a judgment for the amount she paid to FNB plus medical and insurance expenses, was actually not in the nature of a *modification*, but, rather, a determination of amounts due under the decree and an award to her of said amounts, she supplemented her application with a motion seeking such a deter-

mination. The ensuing proceeding resulted in the order of which Gregory now complains. A trial court has inherent power to retain jurisdiction to determine amounts due and to enforce judgments for alimony. *Pope v. Pope*, 251 Neb. 773, 559 N.W.2d 192 (1997). A court that has jurisdiction to make a decision also has the power to enforce it by making such orders as are necessary to carry its judgment or decree into effect. *Laschanzky v. Laschanzky*, 246 Neb. 705, 523 N.W.2d 29 (1994).

Gregory's arguments on appeal are many and varied. They include the following contentions: The judgment granted Virginia by the district court gave her something more than the decree entitled her to; his "arrangement" with Ransom required Gregory to pay only $3,000 on the FNB debt, and since he fulfilled that arrangement, he thus should be deemed to have satisfied his obligation to Virginia under the decree to pay the FNB home equity loan; and the payment of the $15,000 from Ransom should be deemed as paid on Gregory's behalf and credited to him as satisfying his decree obligation. Before addressing these contentions in more detail, suffice it to say that all of Gregory's arguments disregard Virginia's testimony that the $15,000 contributed by Ransom was a loan to her. Implicit in the district court's order is a finding that in fact it was a loan. While the evidence gives rise to conflicting inferences in that regard, we consider and give weight to the fact that the trial judge, having heard and observed the witnesses, accepted one version of the facts over another. See, e.g., *Hanigan v. Trumble*, 252 Neb. 376, 562 N.W.2d 526 (1997). This loan, made on the eve of the FNB foreclosure which threatened to oust Virginia and the parties' children from their family residence, was instrumental in facilitating the FNB payoff and avoiding foreclosure.

Simply stated, it was Virginia, through a loan from Ransom, together with the $3,000 from Gregory and the $8,310.05 chargeoff by FNB, who rescued the home which had been imperiled by Gregory's noncompliance with the decree. That Ransom was involved in negotiating the payoff or physically paying the money to FNB is not alone determinative of whether this was a loan to Virginia. And while the record contains no documentary evidence of this specific loan transaction, Ransom

did obtain an assignment of FNB's rights at the time the loan was paid. This certainly evidences an intent that Ransom had not simply gifted the $15,000 with no expectation of repayment. And there is little evidence, save Gregory's understanding, to support the contention that Ransom contributed this amount as a gift to his former son-in-law, whose inaction had created the foreclosure predicament. The district court obviously rejected such findings, and we heartily agree with it doing so.

In sum, we view the action taken by the district court as nothing more and nothing less than enforcing that portion of the decree which obligated Gregory to hold Virginia harmless from the debt. As an example, and on a smaller scale, had the decree obligated Gregory to pay a credit card debt of $2,000 holding Virginia harmless on the debt and he failed to do so, resulting in a suit against Virginia who, before judgment (or after for that matter) borrowed funds from a third person to pay the amount owing, there is little doubt that an order for Gregory to reimburse that amount to Virginia would be appropriate. Here, the debt was to FNB and the amount was larger; but in all other material respects, the same rationale applies.

Gregory suggests that somehow the judgment was inappropriate because Ransom had not yet demanded payment of the loan from Virginia. Such argument borders on the frivolous. Ransom holds the papers that impose a lien on Virginia's residence, presumably as security for the money he injected into the payoff. Certainly, Virginia, by being forced to assume a personal obligation of $15,000 to protect her home, has suffered harm. The situation is no different in principle than if Virginia had had the financial means to pay the $15,000 out of her own checking account. The source of the funds is not determinative in this case, as they are funds which Virginia is obligated to pay. She has suffered a harm which the decree required Gregory to protect her from, and the court's order was within its power as one necessary to carry its decree into effect. See, e.g., *Laschanzky, supra.*

Returning now to briefly address Gregory's specific arguments, we note initially that our record contains no pleading from Gregory which raises many of the issues in district court that he now raises. More importantly, however, his arguments

have no merit. Regarding the $15,000 judgment in favor of Virginia, it did not give her more than she was entitled to. Rather, it gave her precisely what the decree contemplated. It allows her to repay the loan which she incurred as a result of Gregory's failure to hold her harmless from the FNB home equity loan, an obligation imposed on him under the decree.

Regarding the contention that the "agreement" with Ransom was fulfilled thus operating to discharge Gregory's obligation to Virginia under the decree, we are familiar with the principle cited by Gregory that in some circumstances, a judgment debtor under a decree in equity may satisfy the obligation of such decree by performing an agreement to satisfy in some manner other than provided for by the decree. See, e.g., *Gutierrez v. Gutierrez*, 5 Neb. App. 205, 557 N.W.2d 44 (1996). Assuming, without deciding, that Ransom agreed that he would seek no further moneys from Gregory under the assignment from FNB and that therefore Gregory had "fulfilled" his obligation to Ransom, we find that Gregory overlooks the undisputed fact that Virginia was not a party to any such agreement and, indeed, had no knowledge of it. Moreover, there is no evidence that Virginia authorized Ransom to make such an agreement for her whereby she would accept Gregory's payment of only $3,000 to satisfy his obligation, which was in excess of $25,000. In short, Ransom was not authorized to diminish Virginia's rights under the decree, she made no such agreement with Gregory, and the rationale of *Gutierrez* and like cases is simply inapplicable here.

Finally, Gregory cites *Hopwood v. Hopwood*, 169 Neb. 760, 100 N.W.2d 833 (1960), and *Contra Costa Cty. ex rel. Petersen v. Petersen*, 234 Neb. 418, 451 N.W.2d 390 (1990), as support for his contention that the agreement with Ransom "satisfi[ed] the mortgage [and] should have discharged his obligation under the decree." Brief for appellant at 8. Both of these cases involved payments made by third parties to judgment creditors which were found to have been paid on behalf of the judgment debtors. Thus, the latter were credited with the payments in satisfaction of certain obligations of the respective decrees. They have no application here, where the payments were not made by Ransom on behalf of Gregory but were made by the judgment creditor, Virginia, from the proceeds of a loan from a third party,

Ransom. In conclusion, we find Gregory's arguments to be without merit.

The judgment of the district court gave Gregory credit for the $3,000 which he paid, as well as the $8,310.05 FNB charged off. The $15,000 judgment was within the district court's inherent power and jurisdiction to determine amounts due and to carry into effect the hold harmless provision of the divorce decree. Being correct, the order of the district court is affirmed.

Virginia submitted a motion and affidavit before argument requesting an award of attorney fees pursuant to Neb. Ct. R. of Prac. 9F (rev. 1996). We hereby award the sum of $1,500 for fees in this court.

AFFIRMED.