LAURENCE J. HANIGAN AND ANN HANIGAN, HUSBAND AND WIFE, APPELLEES, V. RAYMOND P. TRUMBLE, PERSONAL REPRESENTATIVE OF THE ESTATE OF TERRY J. BROCKMAN, APPELLEE, AND MARY JANE BROCKMAN, APPELLANT.

562 N.W.2d 526

Filed May 2, 1997.   No. S-95-564.

Charles F. Gotch and David A. Blagg, of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

Jerrold L. Strasheim, Timothy V. Haight, and Mary Leiter Swick, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellees Laurence J. Hanigan and Ann Hanigan.

WHITE, C.J., WRIGHT, CONNOLLY, and GERRARD, JJ., and BOSLAUGH and GRANT, JJ., Retired.

WRIGHT, J.

The district court imposed a constructive trust in favor of Laurence J. Hanigan and Ann Hanigan upon a house owned by

Mary Jane Brockman and ordered her to convey to the Hanigans her title and interest in said house. Mary Jane appeals.

## SCOPE OF REVIEW

An action to impose a constructive trust is an equity action. *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990).

In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court. However, where credible evidence is in conflict on a material issue of fact, the appellate court will consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Brtek v. Cihal*, 245 Neb. 756, 515 N.W.2d 628 (1994).

## FACTS

This action relates to a series of loans made by the Hanigans to Terry J. Brockman in connection with the construction of the Brockmans' house. The Brockmans acquired title to the lot on which the house in question was built on October 10, 1988, as joint tenants. A warranty deed was filed on October 28 with the register of deeds for Douglas County.

Laurence and Terry had been friends since they met at college in 1973. Laurence became a radiologist and practiced in Carroll, Iowa. Terry became a certified public accountant and lawyer in Omaha, Nebraska, and had his own radio talk show regarding taxes and investments.

Terry was entrusted with the Hanigans' legal, tax, business, and investment matters. Terry gave them advice about investments, pension and profit-sharing plans, and the loans which are the subject of this action. Terry prepared their tax returns, quarterly tax estimates, and wills. He also did their estate tax business and financial planning and performed other miscellaneous services. Terry billed the Hanigans annually for his services.

Although the Hanigans did not know it, the Brockmans' financial situation was not secure. Although from 1982 to 1988, Terry was apparently successful in his work for major accounting firms, at all times during that period, the Brockmans owed

more in debt than their annual income. Much of this debt was charged on credit cards. In March 1989, Terry resigned his position at the accounting firm he worked for in the wake of a professional negligence suit and started his own business. His gross revenue from private practice totaled $9,084 in 1989, $13,738 in 1990, and $33,170 in 1991. The Hanigans' expert witness testified at trial that at all times between 1985 and 1993, Terry's liabilities exceeded his assets.

In the summer of 1988, the Brockmans decided to buy or build a new house in the $300,000 price range. On November 3, 1988, the Brockmans signed a proposal for construction of a house at a price of $289,500, making the total of the lot plus the anticipated cost of construction $349,500. Construction began in January 1989. After the last payment was made to the builder in August 1989, the Brockmans moved into the house.

Laurence testified that on June 27, 1989, Terry asked him what he planned to do with some money Terry knew the Hanigans had to invest. As was his custom, Laurence asked Terry for advice. Terry allegedly advised the Hanigans to make an interim construction loan to him for the house.

Based on this advice, eight loans were made by the Hanigans to Terry. Except for the last note, each of the notes bore an interest rate of 14 percent. In exchange, Terry provided the Hanigans with eight promissory notes, which are described as follows:

| Date | Amount | Purpose |
|------|--------|---------|
| 6-27-89 | $37,000 | House Construction |
| 7-21-89 | 43,000 | House Construction |
| 8-23-89 | 25,000 | House Construction |
| 10-11-89 | 20,000 | House |
| 3-23-90 | 35,000 | Not Indicated |
| 1-17-91 | 28,000 | Not Indicated |
| 9-3-91 | 8,000 | Not Indicated |
| 2-16-93 | 25,000 | Not Indicated |

The notes were not secured by a mortgage and were not signed by Mary Jane.

It was Laurence's understanding that all of the notes except for the last two were to finance construction. However, the record reflects that only $96,352.43 of the $221,000 loaned to

Terry could actually be traced to the construction of the house and that many of the loans were made after construction was completed. Laurence testified that Terry had represented to him that all of the loans would be repaid as soon as Terry obtained permanent financing for the house.

Laurence did not begin to inquire about repayment of the loans until the last quarter of 1992. At that time, Terry allegedly told Laurence that he was checking around for a good interest rate for the permanent financing. When the loans were not repaid, Laurence continued to inquire about Terry's progress in obtaining permanent financing. Terry explained that the interest rate was too high and that he was waiting for a more favorable time to get the financing. On February 16, 1993, Terry finally agreed when Laurence told him that interest rates were about as good as they were going to get. However, Terry explained that he could not obtain permanent financing until his other bank loans were cleared up. Laurence testified that he then loaned Terry $25,000 because Terry told him that this amount would be enough to pay off Terry's other debts. However, Terry continued to put off acquisition of permanent financing.

Finally, when Laurence told Terry that he absolutely needed to be repaid in order to make a downpayment on the purchase of farmland for his parents and brothers, Terry told Laurence that it would be difficult to repay him at that time because of a recent bad investment. Still, Terry assured Laurence that he would be able to come up with some money through his pension or profit-sharing plan or by borrowing on his life insurance. This never came to fruition, and Terry eventually refused to talk to the Hanigans at all.

On May 14, 1993, the Hanigans commenced an action at law against Terry to recover on the notes. On May 19, Terry committed suicide, and the title to the house passed to Mary Jane. Following Terry's death, Raymond P. Trumble was appointed personal representative of the estate, and he was made a party defendant pursuant to a court order dated June 18. On January 12, 1994, the district court entered summary judgment in that case in favor of the Hanigans and against the personal representative in the amount of $330,010.08, with interest from and after November 30, 1993, at the rate of $79.96 per day.

The Hanigans also commenced this action in equity on May 14, 1993. On March 30, 1995, the district court entered judgment in favor of the Hanigans, finding that they were entitled to a constructive trust upon the residential property and that as beneficiaries of the constructive trust, they were entitled to collect from the property all principal and interest on the eight loans. The district court found that the principal and interest amounts were $357,996.08 as of November 15, 1994, plus additional interest which accrued at the rate of $79.96 per day. The district court further found that the personal representative had no right, title, or interest of any kind in the property and ordered Mary Jane to convey to the Hanigans the title to the property by quitclaim deed.

## ASSIGNMENTS OF ERROR

Mary Jane makes the following assignments of error: The district court erred (1) in imposing a constructive trust on the house, (2) in determining that Mary Jane had sufficient knowledge of Terry's alleged wrongful conduct to support the imposition of a constructive trust, (3) in determining that the Hanigans had sufficiently traced their assets into the house to support the imposition of a constructive trust, (4) in imposing a constructive trust upon the full value of the house, (5) in failing to hold that the imposition of a constructive trust was barred by the Hanigans' failure to take reasonable action with regard to their dealings with Terry, and (6) in failing to determine that the Hanigans' claims were barred by the doctrine of laches.

## ANALYSIS

### CONSTRUCTIVE TRUST

Mary Jane argues that the district court erred in imposing a constructive trust, because the Hanigans failed to establish the elements necessary to impose a constructive trust. In particular, she asserts that the Hanigans failed to establish wrongdoing on her part and failed to trace sufficient proceeds of the alleged wrongdoing to the house.

A constructive trust is imposed when one has acquired legal title to property under such circumstances that he or she may not in good conscience retain the beneficial interest in the prop-

erty. In such a situation, equity converts the legal titleholder into a trustee holding the title for the benefit of those entitled to the ownership thereof. *Brtek v. Cihal*, 245 Neb. 756, 515 N.W.2d 628 (1994). A constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the grounds that his acquisition or retention of the property would constitute unjust enrichment. *Id.*

An action to impose a constructive trust is an equity action, and the party seeking the remedy of a constructive trust has the burden to establish a constructive trust by clear and convincing evidence. *Id.* Since this is an appeal of an equity action, we try factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court. See *id.*

The record establishes by clear and convincing evidence that Terry fraudulently obtained from the Hanigans $221,000, which is represented by the eight notes. Terry occupied a position of trust with the Hanigans, having performed professional services for them with regard to their legal, tax, business, and investment matters. The Hanigans made the loans to Terry pursuant to his advice to do so and his promise of repayment upon the acquisition of permanent financing, which he represented would be forthcoming. The Hanigans relied on Terry to prepare the promissory notes which he left unsecured and did not have Mary Jane cosign, even though she was a joint tenant of the house.

Loans totaling $188,000 were orally or otherwise represented to be for use as temporary construction financing. However, unbeknownst to the Hanigans, all but two of the loans were made after the construction costs had already been paid in full. Thereafter, an additional $8,000 was loaned for supposed medical expenses, and $25,000 was loaned to enable the Brockmans to obtain permanent financing, although there is no evidence that Terry ever attempted to obtain such financing. Terry also convinced the Hanigans to invest $99,400 in two joint ventures, which evidently never existed. The Hanigans testified that at the time the loans were made, they had no knowledge of the Brockmans' financial difficulties and no reason to believe that Terry would not pay back the loans as promised.

As the Hanigans' financial advisor, accountant, and attorney, Terry had a fiduciary relationship with the Hanigans and, under the circumstances, would not be entitled to hold and enjoy the property so obtained and represented. See *Brtek v. Cihal, supra.* However, the question presented is whether Mary Jane is entitled to hold and enjoy the property so obtained. The court is required to trace the property of a constructive trust, if possible, through whatever mutations and impress a trust thereon in the hands of a third party, unless such third party is in the position of a bona fide purchaser for value without notice, or has changed his or her position thereby so as to give rise to an equitable defense against the plaintiff. See, *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990); *Meier v. Meyer*, 153 Neb. 222, 43 N.W.2d 502 (1950).

Although Mary Jane claims she had no knowledge of Terry's wrongful conduct, she does not argue that she is a bona fide purchaser for value. Whether Mary Jane participated in or had knowledge of the wrongdoing is irrelevant. Mary Jane would be unjustly enriched if permitted to retain the wrongfully taken property of another. See *Kuhlman v. Cargile*, 200 Neb. 150, 262 N.W.2d 454 (1978).

Regardless, Mary Jane claims that the district court erred in imposing a constructive trust, because the Hanigans failed to trace the wrongfully taken money to the house. We agree that where money is the asset upon which the trust is based, it is necessary that the specific amounts be identified and located, either by tracing the money to a specific and existing account, or where the funds have been converted into another type of asset such as by the purchase of real property, the money must be traced into the item of property. See *Arduin v. McGeorge*, 595 So. 2d 203 (Fla. App. 1992). See, also, *Estate of Russell*, 932 S.W.2d 822 (Mo. App. 1996); *Crestar Bank v. Williams*, 250 Va. 198, 462 S.E.2d 333 (1995); *McFarland v. McFarland*, 470 N.W.2d 849 (S.D. 1991); *Cox v. Waudby*, 433 N.W.2d 716 (Iowa 1988); *Philadelphia v. Mancini*, 431 Pa. 355, 246 A.2d 320 (1968).

The Hanigans admit in their brief that they are able to trace only $96,352.43, which includes $3,422.11 from the two bogus investments, to costs related to the construction of the house.

The district court, however, ordered that Mary Jane convey the entire property, valued at approximately $400,000.

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *D.K. Buskirk & Sons v. State, ante* p. 84, 560 N.W.2d 462 (1997). We conclude that in order to be entitled to the benefit of a constructive trust, the Hanigans' money must be traced into the property which is the subject of the trust. Therefore, we find that the Hanigans have a constructive trust in the property in the amount of $96,352.43 and that the district court erred in imposing a constructive trust in a greater amount.

We next address the Hanigans' argument that Mary Jane is estopped to deny that all the loans were used to finance construction of the house, because the Hanigans relied upon Terry's representations that the loans would be used for that purpose. Estoppel, agency, and privity were not sufficiently raised in the pleadings, and the district court did not pass on such issues. Therefore, we do not consider these issues. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *Metropolitan Utilities Dist. v. Twin Platte NRD*, 250 Neb. 442, 550 N.W.2d 907 (1996); *Kropf v. Kropf*, 248 Neb. 614, 538 N.W.2d 496 (1995).

Mary Jane argues that the Hanigans are precluded by principles of equity from taking advantage of the constructive trust because they failed to take measures to protect themselves. We find this argument to be without merit. Inadequacies with regard to the Hanigans' lack of self-protection are not properly a charge against them when the transactions arose in the course of a confidential and fiduciary relationship in which Terry was entrusted to give the Hanigans financial and legal advice.

As to the issue of laches raised by Mary Jane, we find no evidence that she changed her circumstances due to the failure of the Hanigans to pursue their remedies. Therefore, we likewise find no merit to this assertion.

## FRAUDULENT TRANSFER

The Hanigans argue that even if we decline to uphold the constructive trust, we should affirm the district court's judgment because the transfer of title from Terry to Mary Jane was

in fraud of Terry's creditors. The Hanigans claim that even if tracing is required for the imposition of a constructive trust, tracing is not required for fraud where the fraud is a transfer to place property out of the reach of creditors. The Hanigans assert that one need only identify the fraudulently transferred property. Alternatively, the Hanigans argue that they are entitled to a decree voiding the transfers as fraudulent to the extent necessary to satisfy their claims.

Obviously, had Terry not conveyed the property in joint tenancy, the Hanigans would have been able to reach it pursuant to the judgment entered in the action at law on the eight promissory notes. However, a fraudulent transfer on its own will not support the imposition of a constructive trust on the transferred property. As to fraudulent transfers, the court does not impose a constructive trust on the transferred property precisely because the lack of tracing will not justify the exclusive ownership rights that a constructive trust entails. The court instead sets aside the fraudulent transfer and does so only as to such creditors as attack it. See *United States Nat. Bank of Omaha v. Rupe*, 207 Neb. 131, 296 N.W.2d 474 (1980).

The Hanigans argue that Terry's act of placing title to the property in joint tenancy gratuitously transferred an interest to Mary Jane when he knew or believed that he had or would be incurring debts from the acquisition of the lot and construction of the residence which were or would be beyond his ability to pay. The Hanigans claim that the first fraudulent conveyance was the undivided one-half interest in the lot, which cost $60,000, and that each subsequent increase in the value of the house through payment to the builder constituted a fraudulent transfer to the extent of one-half of each progress payment. They argue that Terry's suicide, by effectuating Mary Jane's right of survivorship, constituted a fraudulent transfer of his remaining one-half interest in the house.

We find that Terry's act of placing the title in joint tenancy was a fraudulent transfer as to the Hanigans. The joint tenancy deed was recorded in October 1988. The Nebraska Uniform Fraudulent Conveyance Act, Neb. Rev. Stat. §§ 36-601 to 36-613 (Reissue 1988), which was in effect at the time of this conveyance, is therefore controlling. Section 36-606 stated:

Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he or she will incur debts beyond his or her ability to pay as they mature, is fraudulent as to both present and future creditors.

The undisputed testimony establishes that the conveyance to Mary Jane was made without fair consideration. At all times during the years immediately before and after the conveyance, Terry was insolvent in that his assets at fair market value were less than his liabilities. A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay the probable liability on his existing debts as they become absolute and matured. § 36-602. The record establishes that at the time of the conveyance, Terry intended to incur debts beyond his ability to pay as they matured.

Section 36-609 provided that "[w]here a conveyance . . . is fraudulent . . . such creditor . . . may . . . (a) [h]ave the conveyance set aside . . . to the extent necessary to satisfy his or her claim . . . ." Thus, the Hanigans are entitled to have the original conveyance of the property set aside. Since this conveyance is set aside, we need not consider subsequent additions to the value of the property or whether Terry's suicide effected a transfer of his interest in the property.

We next address the extent to which the Hanigans may levy execution upon the property. The Uniform Fraudulent Conveyance Act defined an "asset" which may be fraudulently conveyed as "property not exempt from liability for his or her debts." See § 36-601.

Without deciding these issues, we point out that Mary Jane may be entitled to claim a homestead allowance pursuant to Neb. Rev. Stat. § 30-2322 (Reissue 1995) or Neb. Rev. Stat. § 40-101 (Reissue 1993) and an exempt property allowance pursuant to Neb. Rev. Stat. § 30-2323 (Reissue 1995). Mary Jane's children may be entitled to a reasonable allowance for support pursuant to Neb. Rev. Stat. § 30-2324 (Reissue 1995). These issues have not been addressed by the district court, nor were they considered by the court when it found a constructive trust in all of the property. Thus, the property is still subject to Mary

Jane's possible right to assert such exemptions involving the property.

The Hanigans may levy against the property only to the extent that it is nonexempt. Therefore, the district court must consider what exemptions and other allowances have priority over the Hanigans' claims.

## CONCLUSION

The judgment of the district court is affirmed in part and in part reversed and remanded with directions to reduce the amount of the constructive trust to $96,352.43 and to allow the Hanigans to levy against the property to the extent that it is not exempt.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.

CAPORALE, J., not participating.