ProData Computer Services, Inc., a Nebraska corporation, appellee, v. Ronald E. Ponec I, an individual, defendant and third-party plaintiff, appellant, and Marion R. Wamsat and Joseph Alan Hartley, individuals, third-party defendants, appellees.

590 N.W.2d 176

Filed February 19, 1999.   No. S-97-1114.

Patrick T. Riskowski, of Gallup & Schaefer, for appellant.

James B. Cavanagh, of Lieben, Whitted, Houghton, Slowiaczek & Dougherty, P.C., for appellees.

Hendry, C.J., Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Ronald E. Ponec I appeals an order of the district court for Douglas County imposing a constructive trust on certain assets owned by Ponec in favor of appellee ProData Computer Services, Inc. We affirm.

## STATEMENT OF FACTS

Appellees Marion R. Wamsat and Joseph Alan Hartley started ProData, a computer business, in 1981. When they created ProData, Wamsat and Hartley were its sole shareholders, a status they continued to hold at the time of trial. Wamsat and Ponec were married to each other during the years of ProData's early growth. They were married in 1962. Wamsat and Ponec separated in 1990 and divorced in 1991.

At the time Wamsat and Hartley formed ProData, Ponec was self-employed in his own computer consulting business, which was located next door to ProData's office. About a year after ProData had been in business, Ponec began to assist Wamsat and Hartley with bookkeeping for ProData on an uncompensated, as-needed basis. At that point, ProData's accounting needs were few, and Ponec, who had accounting experience, was able to assist ProData while continuing to maintain his separate business.

Ponec began to work for ProData on a full-time basis in about 1982. Although he had substantive knowledge of computers, Ponec's employment duties for ProData were at all times exclusively in accounting and financial matters. Ponec established ProData's internal accounting system using computer software created by Wamsat. Ponec was responsible for handling ProData's billings, collections, deposits, expense payments, and bank accounts. Ponec stored most of ProData's financial records in his office. Ponec stored some records, including those detailing compensation paid to ProData employees, in his desk, which he kept locked when he was not in his office. Wamsat described Ponec as ProData's "chief financial operator."

Wamsat, Hartley, and Ponec all characterized ProData as a "family" business which successfully grew over time. Two adult

children of Wamsat and Ponec's were employed by ProData, as was Hartley's wife. Although Ponec was never a shareholder of ProData, he was compensated in the same manner as Wamsat and Hartley, ProData's owners. Ponec received an annual salary of approximately $70,000, plus a company car for business and personal use with fuel and insurance costs fully paid. Ponec received retirement and insurance benefits and reimbursement for business expenses charged on a credit card which ProData procured for his business use. There was trial evidence that during approximately the first 6 years of his employment with ProData, Ponec continued to maintain his separate computer consulting business, and that he kept all of the proceeds generated by it.

Ponec and Wamsat separated from each other in 1990 and divorced in 1991. Ponec continued to work at ProData, and his compensation was not impacted as a result of the divorce. Ponec did not receive any stock or ownership interest in ProData from Wamsat in the 1991 divorce proceedings. At that time, ProData employed 9 or 10 persons, including Ponec. By the time of trial in the instant case, in August 1997, ProData had grown to 15 employees.

ProData maintained business accounts at two Omaha banks. ProData's general operating account, as well as a money market account and several certificates of deposit, was at Western Security Bank (WSB). ProData also maintained a money market account and a checking account for paying small miscellaneous company expenses at Douglas County Bank & Trust (DCBT). Wamsat testified that there was a DCBT branch office in the same building that housed ProData's office and that ProData maintained the DCBT accounts for convenience. According to Wamsat, ProData's receipts were to be deposited in the DCBT money market account as they were received and then transferred in a lump sum once or twice a month to ProData's operating account at WSB.

Ponec provided Wamsat and Hartley with a general report on ProData's finances every 3 to 4 months. According to Wamsat, she and Hartley requested monthly financial reports from Ponec, but they received this information irregularly "[b]ecause Mr. Ponec would never get the books done in time for us to

review them every month." In these reports, Ponec presented Wamsat and Hartley with a general profile he prepared of ProData's income and expenses that contained little detail. According to Wamsat, "[Ponec] always had a reasonable summation" when he was questioned about specific items, and she had no knowledge of any irregularity in the firm's accounting. Wamsat testified that neither she nor Hartley knew about any unauthorized compensation taken by Ponec and that had they known of such, there would have been "a horrible battle."

In November 1995, Hartley expressed concern about ProData's finances. Hartley told Wamsat that he thought ProData's net profit should have been higher than that reported by Ponec. Ponec was away on vacation, so Hartley and Wamsat personally examined the ProData records. They quickly detected substantial irregularities. Without Ponec's knowledge, Wamsat and Hartley hired their own accountant to aid them in their examination of ProData's accounts. Wamsat and Hartley also obtained assistance from personnel at DCBT and WSB, including production of the banks' microfilmed records of ProData's monthly account activity during the 1990 to 1995 period.

With assistance, Wamsat and Hartley detected several categories of financial transactions in which Ponec repeatedly converted ProData funds to his own use. The first category consisted of checks written by Ponec on ProData's DCBT money market account for large sums of cash. Ponec "buried" these checks in ProData's records as payments to fictitious vendors. The second category of questionable transactions included direct payments from ProData's DCBT account for personal luxuries Ponec afforded himself, including investments, jewelry, clothing, guns, and a country club membership. Wamsat and Hartley found that Ponec had funded monthly payments for his personally owned Mercedes Benz automobile from ProData's WSB operating account. Ponec had also taken customer checks made payable to ProData for professional services and deposited them directly into his own checking account.

ProData filed suit against Ponec on February 23, 1996, seeking a judgment of $754,523.06 against Ponec for alleged fraud,

conversion, embezzlement, breach of fiduciary obligations, and breach of his employment contract with ProData.

After filing its petition and before trial, ProData obtained pretrial attachment of certain assets owned by Ponec, including the home in which Ponec and his present wife resided in Elkhorn, Nebraska, and investment accounts that Ponec maintained at Dain Bosworth, Inc., and Wallace Weitz & Co. Shortly before trial, with the court's permission, ProData added a cause of action seeking imposition of a constructive trust upon these assets and others owned by Ponec.

In response to ProData's petition, Ponec admitted that he was a financial officer of ProData empowered to conduct ProData's financial affairs and maintain its records. Ponec denied all of ProData's claims for recovery. He affirmatively alleged, inter alia, that ProData ratified all of his actions and that ProData's claims against him were barred by laches, waiver, and estoppel and ProData's contributory negligence.

ProData's claims seeking recovery of money from Ponec were tried to a jury on August 11 to 15, 1997. The jury returned a verdict in favor of ProData for $579,507.30. The trial court and the parties' counsel agreed that ProData's request to impose a constructive trust on Ponec's assets sounded in equity. In a separate proceeding tried to the bench on the record of evidence introduced in the jury proceedings, the trial court imposed a constructive trust on all property belonging to Ponec, in an amount not to exceed the amount of the jury verdict. The trial court subsequently granted ProData's motion for $114,471 in prejudgment interest. Ponec appeals.

## ASSIGNMENTS OF ERROR

Ponec claims the trial court erred in imposing a constructive trust in favor of ProData on the house owned by Ponec and in imposing a constructive trust upon three investment accounts owned by Ponec at Dain Bosworth, Inc., and Ponec's investment account at Wallace Weitz & Co.

## STANDARD OF REVIEW

In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion

independent of the findings of the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed witnesses and accepted one version of the facts rather than another. *Mischke v. Mischke,* 253 Neb. 439, 571 N.W.2d 248 (1997) (*Mischke II*).

## ANALYSIS

*General Principles.*

On appeal, Ponec does not dispute the amount or correctness of the jury's verdict in favor of ProData. Ponec's appeal is limited to his claims that the trial court should not have imposed a constructive trust upon the house in which Ponec resides with his wife or upon Ponec's investment accounts at Dain Bosworth, Inc., and Wallace Weitz & Co.

A constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the grounds that his or her acquisition or retention of the property would constitute unjust enrichment. *Hanigan v. Trumble,* 252 Neb. 376, 562 N.W.2d 526 (1997). An action to impose a constructive trust sounds in equity. *Chalupa v. Chalupa,* 254 Neb. 59, 574 N.W.2d 509 (1998).

A party seeking to impose a constructive trust has the burden to establish a constructive trust by clear and convincing evidence. *Hanigan v. Trumble, supra.* Real property may be the subject of a constructive trust. See *id.* See, also, *VonSeggern v. Willman,* 244 Neb. 565, 508 N.W.2d 261 (1993); *Kuhlman v. Cargile,* 200 Neb. 150, 262 N.W.2d 454 (1978). Intangible property and liquid assets such as stocks, and bank and investment accounts may also be held subject to a constructive trust. See, *Andrews v. Schram,* 252 Neb. 298, 562 N.W.2d 50 (1997); *Gottsch v. Bank of Stapleton,* 235 Neb. 816, 458 N.W.2d 443 (1990). Regardless of the nature of the property upon which the constructive trust is imposed, a plaintiff seeking to establish the trust must prove by clear and convincing evidence that the individual holding the property obtained title to it by fraud, misrepresentation, or an abuse of an influential or confidential relationship and that under the circumstances, such individual

should not, according to the rules of equity and good conscience, hold and enjoy the property so obtained. *Brtek v. Cihal*, 245 Neb. 756, 515 N.W.2d 628 (1994).

*Record on Appeal.*

The bill of exceptions contains a verbatim record of the trial to the bench on August 15, 1997, on ProData's cause of action for imposition of a constructive trust, after the jury had rendered a verdict in favor of ProData for $579,507.30. At the conclusion of the hearing on the constructive trust, the trial judge ordered that constructive trusts be imposed on Ponec's property and further ordered ProData's counsel to "submit an order that reflects the findings that the court does allow constructive trusts on the properties of the defendant alone not to exceed the value of the judgment that's been rendered[.]"

No order reflecting the court's determination of August 15, 1997, and the scope of the constructive trusts thus imposed can be found in the record on appeal. It is incumbent upon the party appealing to present a record which supports the errors assigned. *Sindelar v. Hanel Oil, Inc.*, 254 Neb. 975, 581 N.W.2d 405 (1998). Our examination of the appeal is obviously limited by the record on appeal, and we proceed accordingly.

Our examination of the record on appeal shows that the transcript from the district court contains copies of the pretrial attachment order for Ponec's house, dated February 23, 1996, and the pretrial attachment order of January 13, 1997, for Ponec's Dain Bosworth, Inc., and Wallace Weitz & Co. accounts. The transcript also contains a single typewritten, unsigned page entitled "District Court Journal," dated August 15, 1997, which is not file-stamped and which notes in pertinent part as follows: "Pursuant to plaintiff's sixth cause of action a construction [sic] trust is imposed against all of the assets of the Defendant Ronald E. Ponec to the extent of the judgment. Order to be submitted." The transcript is devoid of any other trial court orders imposing a constructive trust identifying specific assets owned by Ponec, and as noted, there is no order in the appellate file prepared by counsel identifying with specificity the objects of the trust following the trial court's order of August 15.

There is no dispute that the trial court imposed a constructive trust on Ponec's home and investment accounts. Absent an order by the trial court expressly defining the scope of the constructive trust imposed upon Ponec's home and his Dain Bosworth, Inc., and Wallace Weitz & Co. investment accounts, our analysis of Ponec's claims on appeal is limited to an analysis of the propriety of the general constructive trust orders contained in the record.

*Mootness: Practice Tip: Ponec's House.*

As his first assignment of error, Ponec claimed that for a variety of reasons the constructive trust imposed on his house in Elkhorn is improper. At oral argument of this case on January 8, 1999, counsel for both parties stipulated that in view of the fact that the house had been disposed of, the appellate issue pertaining to the imposition of the constructive trust on the house is moot. We therefore treat the issue of the constructive trust on the house as moot.

Where a party or parties are aware that appellate issues have become moot during the pendency of the appeal and such mootness is not reflected in the record, in the interest of judicial economy, a party may file a suggestion of mootness in the Nebraska Supreme Court or Nebraska Court of Appeals as to the issue or issues claimed to be moot. Compare, Neb. Ct. R. of Prac. 7C (rev. 1996), providing for a suggestion of mootness in prison disciplinary and postconviction cases. A suggestion of mootness as to some but not all issues is in addition to, but not a substitute for, a motion to dismiss for lack of jurisdiction due to mootness of the entire appeal under rule 7B(1).

*Ponec's Investment Accounts.*

Ponec claims that the trial court erred in imposing a constructive trust on his investment accounts at Dain Bosworth, Inc., and Wallace Weitz & Co. Ponec admitted ownership of these accounts and he testified at trial that he deposited ProData funds into his investment accounts at Dain Bosworth, Inc., and Wallace Weitz & Co. Trial exhibits 57, 59, and 65 established, and Ponec admitted, that from October 1993 through December 1995, Ponec deposited a total of $67,931.99 of ProData's funds

directly into his Dain Bosworth, Inc., accounts. Exhibits 71 and 83 established, and Ponec admitted, that in 1995, he used $20,000 in ProData funds to purchase investments for his Wallace Weitz & Co. account.

On appeal, Ponec nevertheless claims that a constructive trust cannot be imposed upon these investment accounts because he established them before the funds taken from ProData were discovered. Ponec also claims that a constructive trust is improper because part of the total investments in these accounts may have been purchased with funds other than those proved to have been wrongfully taken by Ponec from ProData. We find both of these arguments unpersuasive.

Ponec admitted taking the funds at issue and forwarding them to Dain Bosworth, Inc., and Wallace Weitz & Co. for investment in his personal accounts. He admitted that neither ProData nor either of its shareholders received the benefit of the ProData funds or investments purchased therewith at Ponec's direction. Trial evidence supported ProData's claim that the corporation and its officers were unaware of Ponec's misdeeds for at least 4 years preceding their discovery of Ponec's unauthorized financial transactions.

We have previously stated:

> Where money is the asset upon which the [constructive] trust is based, it is necessary that the specific amounts be identified and located, either by tracing the money to a specific and existing account, or where the funds have been converted into another type of asset such as by the purchase of real property, the money must be traced into the item of property.

*Chalupa v. Chalupa*, 254 Neb. 59, 62, 574 N.W.2d 509, 512 (1998).

The fact that Ponec's investment accounts existed prior to the deposit of the funds he obtained from ProData is immaterial to our analysis of this case. Where money is the asset upon which a constructive trust is based, the amount of money subject to trust may be identified and located by, inter alia, tracing the money into a specific and existing account. See *id.* In the instant case, the money from ProData has been clearly and convincingly traced into the two investment accounts.

Ponec suggests that the investment accounts should be excluded from imposition of a constructive trust, because the ProData funds as invested in Ponec's accounts may have appreciated in value. The law is clear that if the beneficiary of a constructive trust proves his or her entitlement to imposition of such a trust by clear and convincing evidence, the beneficiary's judgment interest may in appropriate cases be satisfied not only by the original value which constitutes the trust corpus, but also by the reasonable value of the appreciation of that asset. See, *Mischke v. Mischke*, 247 Neb. 752, 530 N.W.2d 235 (1995) (*Mischke I*); *Kuhlman v. Cargile*, 200 Neb. 150, 262 N.W.2d 454 (1978); *Vogt v. Town and Country Realty*, 194 Neb. 308, 231 N.W.2d 496 (1975).

Furthermore, we have recently observed: " ' "An agent or other fiduciary who deals with the subject-matter of the agency so as to make a profit for himself will be held to account in equity as trustee for all profits and advantages acquired by him in such dealings. . . ." ' " *Mischke II*, 253 Neb. at 447, 571 N.W.2d at 255-56. In *Mischke II*, this court affirmed imposition of a constructive trust upon preexisting real and personal property and funds derived therefrom that were manipulated for personal gain by an estate's personal representative. See, also, *Hanigan v. Trumble*, 252 Neb. 376, 562 N.W.2d 526 (1997) (affirming imposition of constructive trust on home constructed with funds obtained by financial advisor through breach of fiduciary duty to plaintiffs); *Andrews v. Schram*, 252 Neb. 298, 562 N.W.2d 50 (1997) (approving ex parte orders attaching bank accounts of insurance consultants who wrongly converted and withheld funds from their principal, thereby breaching their fiduciary duty). We find no error in the trial court's finding that the fact that Ponec established the accounts before his misdeeds were discovered was not determinative as to imposition of a constructive trust upon the investment funds.

Ponec testified that during 1991 to 1995, he had no source of earned income other than his ProData salary and, in addition, some limited interest on investments. ProData introduced uncontroverted evidence that during that time period, at least $87,931.99 of its funds were deposited by Ponec directly into his personal investment accounts at Dain Bosworth, Inc., and

Wallace Weitz & Co. ProData introduced further uncontroverted evidence that during that time, Ponec deposited more than $247,000 in checks made payable to ProData by its customers into Ponec's personal checking account for his own use. The trial evidence was also undisputed that from 1991 through 1995, Ponec issued drafts to himself for cash from ProData's accounts totaling more than $30,000, all for his personal use. At trial, Ponec testified that he *might* have partially funded the Dain Bosworth, Inc., and Wallace Weitz & Co. accounts with moneys other than those he took from ProData, but he produced no evidence of this. In view of the undisputed evidence detailed above, Ponec's statement, without more, is insufficient to support his claim that the trial court erred in imposing a constructive trust on Ponec's Dain Bosworth, Inc., and Wallace Weitz & Co. investment accounts. Upon our de novo review, we determine that the evidence clearly and convincingly establishes that the unauthorized ProData funds found their way into Ponec's investment accounts and that the imposition of a constructive trust on the accounts was proper.

## CONCLUSION

The trial court's order provided generally that ProData was entitled to imposition of constructive trusts upon Ponec's assets, including but not limited to Ponec's house and Ponec's Dain Bosworth, Inc., and Wallace Weitz & Co. investment accounts. Issues surrounding the imposition of a constructive trust on the house are moot. The record on appeal demonstrates that ProData met its burden of proof by clear and convincing evidence as to the imposition of the constructive trust on the investment accounts. On this record, we find no error in the trial court's order imposing a constructive trust in favor of ProData on Ponec's Dain Bosworth, Inc., and Wallace Weitz & Co. investment accounts.

AFFIRMED.