OPINION OF THE NEBRASKA COURT OF APPEALS

(Designated for Permanent Publication)


NOTICE: DUE TO UNFORESEEN CIRCUMSTANCES, THIS OPINION IS BEING POSTED TEMPORARILY IN "SLIP" OPINION FORM. IT WILL BE REPLACED AT A LATER DATE WITH AN "ADVANCE"OPINION, WHICH WILL INCLUDE A CITATION.


Case Title

RICHARD QUALSETT, INDIVIDUALLY AND AS ATTORNEY IN FACT FOR THE
FORMER SHAREHOLDERS OF OASIS PUBLISHING, INC., APPELLANT,
V.
DAVID ABRAHAMS, INDIVIDUALLY AND AS ATTORNEY IN FACT FOR THE
FORMER SHAREHOLDERS OF OASIS PUBLISHING, INC., APPELLEE.


Case Caption

QUALSETT V. ABRAHAMS


Filed April 19, 2016.   No. A-15-215.


Appeal from the District Court for Lancaster County: STEPHANIE F. STACY, Judge. Affirmed.

Robert R. Creager, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Thomas E. Zimmerman and John C. Hahn, of Jeffrey, Hahn, Hemmerling & Zimmerman, P.C., L.L.O., for appellee.

QUALSETT v. ABRAHAMS

Filed April 19, 2016.   No. A-15-215.

1. **Equity: Appeal and Error.** A case in equity is reviewed de novo on the record, subject to the rule that where credible evidence is in conflict on material issues of fact, an appellate court considers and may give weight to the fact the trial court observed the witnesses and accepted one version of the facts over another.

2. **Limitations of Actions: Claims: Recoupment.** Unlike a counterclaim that seeks an affirmative judgment, the defense of recoupment is not barred by a statute of limitations.

3. **Claims: Recoupment.** Recoupment may be used where a defendant has a claim for damages against a plaintiff arising out of the very same transaction from which the plaintiff seeks to recover.

4. **Claims: Recoupment: Proof.** To state an affirmative defense of recoupment, the defendant must prove the elements of his claim and that it occurred in the very same action as the plaintiff's claim against him.

5. **Negligence: Proof.** The breach of a fiduciary duty has been likened to professional malpractice; therefore, to prove the elements of breach of fiduciary duty, the moving party must establish the elements of negligence--duty, breach of duty, causation, and damages.

6. **Actions: Negligence: Recoupment: Equity.** An action for breach of fiduciary duty seeking an equitable recoupment is an equitable action.

7. **Equity: Appeal and Error.** In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

8. **Negligence: Damages.** It is the duty of the party claiming a breach of fiduciary duty to also establish that he was damaged by such breach.

9. **Trusts: Agency: Equity.** An agent or other fiduciary who deals with the subject matter of the agency so as to make a profit for himself will be held to account in equity as trustee for all profits and advantages acquired by him in such dealings.

IRWIN, PIRTLE and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Richard Qualsett, in his capacity as attorney in fact for the former shareholders of Oasis Publishing, Inc. (Oasis), filed a complaint against David Abrahams, a former Oasis shareholder, alleging breach of fiduciary duty. Abrahams filed a counterclaim, seeking a declaration that he was entitled to recovery of funds Qualsett was withholding from him. In response to the counterclaim, Qualsett asserted the affirmative defense of recoupment, based upon Abrahams' alleged breach of fiduciary duty. The district court for Lancaster County (1) granted summary judgment to Abrahams on Qualsett's complaint, on the basis that the statute of limitations barred Qualsett's claim against him, and (2) entered judgment for Abrahams on his counterclaim, rejecting Qualsett's claim for recoupment, following a bench trial. Qualsett appeals both orders.

After reviewing the record on appeal, we agree that Qualsett was not entitled to recoupment on Abrahams' counterclaim, because he failed to prove all of the elements of a breach of fiduciary duty claim. Because Qualsett was unsuccessful on his breach of fiduciary duty claim asserted as a defense to Abrahams' counterclaim, we need not determine whether the statute of limitations barred his affirmative claim of breach of fiduciary duty asserted in his complaint. Therefore, we affirm the court's order in favor of Abrahams.

## BACKGROUND

Qualsett, Abrahams, and Craig Smith formed Oasis. Abrahams served as president and managed the day-to-day activities of the company, while Qualsett provided the majority of the company's financial backing and Smith contributed financially and to marketing. Some smaller shareholders also purchased Oasis stock. The business of Oasis involved creating digital, searchable versions of statutes and case law. Through litigation, Oasis obtained a license from West Publishing Company that allowed it to utilize that company's case law pagination.

In April 2001, Oasis shareholders negotiated the sale of all of Oasis' stock to JuriSearch Holdings, LLC (JuriSearch). To effectuate the sale, the Oasis shareholders signed an irrevocable power of attorney naming Qualsett, Abrahams, and Smith as attorneys in fact for Oasis. The stock purchase agreement with JuriSearch involved a cash payment at closing of $1,110,000, largely to retire Oasis' debt, and a promissory note upon which JuriSearch was to make monthly interest payments followed by balloon principal payments in June 2001 and April 2003. The parties also agreed during negotiations that Abrahams would go to work for JuriSearch following the sale to assist with the transition. Although Abrahams began working with JuriSearch immediately after the stock sale, his employment agreement was not signed until later that year. Abrahams ultimately signed two contracts at the same time: an employment agreement and a noncompetition agreement (the noncompete agreement). Two versions of the employment agreement appear in the record. One version of the employment agreement references the noncompete agreement, which in turn references an employment agreement; the other version makes no reference to the noncompete agreement. Abrahams' employment agreements paid him in membership units or in stock options. His noncompete agreement paid him separately $10,000 per month for 2 years.

In April 2003, JuriSearch's final balloon principal payment came due and the former Oasis shareholders learned that JuriSearch would be unable to pay what it owed. Qualsett, Abrahams, and Smith, operating under their power of attorney, approved a 1-year extension of JuriSearch's principal payment with continued interest payments. In March 2004, former Oasis shareholders again rolled over JuriSearch's principal payment. Annual rollovers of the principal amount due to JuriSearch's inability to pay continued in this manner until the April 2007 principal payments were coming due. Qualsett states that after the 2006 rollover agreement, he learned that Abrahams had been receiving payments on a noncompete agreement as well as an employment agreement from JuriSearch. Qualsett took over negotiations of the 2007 rollover from Abrahams because he was upset that Abrahams was negotiating rollover of JuriSearch's debt to him personally at the same time as he was negotiating rollover of JuriSearch's debt to the former Oasis shareholders and that Abrahams had allegedly not disclosed his personal interests.

JuriSearch and Oasis eventually settled JuriSearch's breach of its promissory note. The settlement allowed JuriSearch to pay its debt in equal installments each month over a period of 42 months. In June 2008, Qualsett obtained permission from the former Oasis shareholders to withhold Abrahams' portion of the payments from JuriSearch's installment payments on the settlement and to further seek judgment against Abrahams for repayment of the moneys he received under his noncompete agreement. Qualsett submitted at trial that he was presently withholding $39,442 of distributions to Abrahams and that if JuriSearch continued to make all payments, he would be holding $52,234 by the end of the year.

Qualsett, Abrahams, and Smith entered into a voluntary agreement tolling the statute of limitations for certain potential causes of action against one another beginning on April 30, 2010. Qualsett, in his capacity as attorney in fact for the former shareholders of Oasis, filed suit against Abrahams for breach of fiduciary duty stemming from his allegedly undisclosed self-dealing in October 2011. Abrahams counterclaimed for a declaratory judgment that he is entitled to his portion of the payment from JuriSearch's settlement and fifth installment promissory note. To the counterclaim, Qualsett pled the affirmative defense of equitable recoupment.

The district court found on Abrahams' motion for summary judgment that the statute of limitations barred Qualsett's action against Abrahams. After trial on the counterclaim and affirmative defense, the trial court entered judgment in favor of Abrahams in the amount of $52,234. This appeal follows.

## ASSIGNMENTS OF ERROR

Qualsett assigns, restated and renumbered, that the district court erred (1) in denying Qualsett's request for equitable recoupment and entering judgment in favor of Abrahams after trial on Abrahams' counterclaim and (2) in concluding that Qualsett's claim was barred by the statute of limitations on summary judgment.

## STANDARD OF REVIEW

[1] A case in equity is reviewed de novo on the record, subject to the rule that where credible evidence is in conflict on material issues of fact, we consider and may give weight to the fact the trial court observed the witnesses and accepted one version of the facts over another. *Smith v. City of Papillion*, 270 Neb. 607, 705 N.W.2d 584 (2005).

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Zornes v. Zornes*, 292 Neb. 271, 872 N.W.2d 571 (2015).

ANALYSIS

*Trial on Counterclaim and Defense*
*of Equitable Recoupment.*

Although the trial court granted summary judgment to Abrahams on Qualsett's breach of fiduciary claim, determining that it was barred by the statute of limitations prior to the case's proceeding to a bench trial on Abrahams' counterclaim, we address the issues in reverse order. We do so because the analysis of the merits of Qualsett's affirmative defense is dispositive of the appeal.

In his counterclaim, Abrahams initially pled three causes of action: breach of fiduciary duty, declaratory judgment relating to future distributions from JuriSearch, and defamation. At trial, however, Abrahams elected to proceed on only the declaratory judgment claim.

In response to the counterclaim, Qualsett pled the defense of recoupment, claiming that if he were found to be indebted to Abrahams, then Qualsett was entitled to a setoff for the amounts Abrahams received from JuriSearch under the noncompete agreement. The basis for this claim was that Abrahams breached his fiduciary duty to the Oasis shareholders by negotiating and executing an employment agreement and a noncompete agreement without disclosing the agreements to the Oasis shareholders and by negotiating JuriSearch's default on his noncompete agreement at the same time as he was negotiating JuriSearch's default on its promissory note to former Oasis shareholders. Qualsett's allegations supporting his defense of recoupment mirrored those pled in the original complaint in support of his claim for breach of fiduciary duty.

The district court found in favor of Abrahams on his counterclaim for declaratory judgment, declaring Abrahams to be entitled to payment of his contractual share of the JuriSearch distribution. It found against Qualsett on his affirmative defense of recoupment, concluding that although he proved that Abrahams owed a fiduciary duty to the Oasis shareholders, he failed to prove a breach of that duty, prove that any alleged breach damaged the former shareholders, or prove that the alleged breach arose out of the same transaction as Abrahams' claim for declaratory relief.

On appeal, Qualsett assigns that the district court erred in rejecting his affirmative defense of recoupment and that the district court therefore further erred in entering judgment for Abrahams after trial. Qualsett does not dispute that Abrahams would be entitled to judgment on his counterclaim if the court rejected Qualsett's affirmative defense of recoupment.

[2-4] Unlike a counterclaim that seeks an affirmative judgment, the defense of recoupment is not barred by a statute of limitations. *Ed Miller & Sons, Inc. v. Earl*, 243 Neb. 708, 502 N.W.2d 444 (1993). Recoupment may be used where a defendant has a claim for damages against a plaintiff arising out of the very same transaction from which the plaintiff seeks to recover. See *id.* To state an affirmative defense of recoupment, the defendant must prove the elements of his claim and that it occurred in the very same action as the plaintiff's claim against him. See *id.*

In this case, Qualsett's defense of recoupment is based upon his claim that Abrahams breached his fiduciary duty to the former Oasis shareholders and caused them damages of approximately $199,000. To succeed, then, Qualsett must prove the elements of breach of fiduciary duty and that this breach occurred in the very same transaction as that giving rise to Abrahams' counterclaim. See *id.*

[5] The breach of a fiduciary duty has been likened to professional malpractice. *Community First State Bank v. Olsen*, 255 Neb. 617, 587 N.W.2d 364 (1998); *In re Louise V. Steinhoefel Trust*, 22 Neb. App. 293, 854 N.W.2d 792 (2014). Malpractice is itself an instance of negligence; therefore, to prove the elements of breach of fiduciary duty, the moving party must establish the elements of negligence--duty, breach of duty, causation, and damages. See *In re Louise V. Steinhoefel Trust, supra.*

The district court determined that although Qualsett proved the existence of a fiduciary duty, he failed to prove the remaining elements. To reach this conclusion, the district court made several findings of fact based upon the evidence presented to it. It determined that as early as 2003, when JuriSearch first defaulted on the promissory note, Abrahams told both Qualsett and Smith that JuriSearch was not paying him the money he was owed either. At that time, Abrahams was no longer working for JuriSearch, but neither Qualsett nor Smith inquired why JuriSearch owed Abrahams any money. The court further found that neither Qualsett nor Abrahams was a credible witness and that their testimony was not entitled to much weight. The court determined that Smith, the only other witness to testify at trial, was credible.

[6,7] An action for breach of fiduciary duty seeking an equitable recoupment is an equitable action. In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004).

While the proponent of an equity claim generally must prove the elements of his claim by clear and convincing evidence, we have previously noted that Nebraska law is unclear as to the burden of proof for an equitable defense brought in response to a claim at law. See *Precision Enterprises v. Duffack Enterprises*, 14 Neb. App. 512, 710 N.W.2d 348 (2006), *overruled in part on other grounds, Knights of Columbus Council 3152 v. KFS BD, Inc.*, 280 Neb. 904, 791 N.W.2d 317 (2010). Without determining which burden of proof applies in this situation, we find that even under the preponderance of the evidence standard applied by the district court, Qualsett has not satisfied the burden of proving he is entitled to equitable recoupment.

There is no disagreement that Abrahams owed a fiduciary duty to the former Oasis shareholders. The issues are whether he breached that duty and, if so, whether that breach caused damage to the former shareholders. Upon our de novo review, we conclude that the evidence is insufficient to support causation.

Qualsett first argues that Abrahams should have disclosed the employment agreement, and particularly the noncompete agreement, when he was initially negotiating the sale of Oasis to JuriSearch. The evidence reveals, however, that neither the employment agreement nor the noncompete agreement existed at the time of those negotiations. According to the evidence,

JuriSearch did not provide any contracts to Abrahams until a couple of months after the sale. Abrahams cannot be held liable for failing to disclose that which did not exist.

Qualsett also argues that Abrahams should have disclosed the existence of the agreements when he was negotiating the first rollover of the promissory note in 2003, because he was also negotiating payment on his noncompete agreement. The record discloses that Abrahams received his requisite $10,000 per month through December 2001 under the noncompete agreement. On April 15, 2002, he entered into his first amendment to the noncompete agreement, in which he agreed that payment for the first 4 months of 2002 would be delayed and his monthly payments would be reduced to $2,000, with a lump sum of $135,833.50 to be paid on March 1, 2003, and interest at 10 percent on any payment delinquent by 10 or more days. When Abrahams negotiated this amendment, JuriSearch was still making monthly interest payments to the former Oasis shareholders and had not yet defaulted on the promissory note; therefore, Abrahams had no duty to disclose.

However, Abrahams continued to negotiate amendments of his noncompete agreement annually through 2006. Beginning in 2003, he also began negotiating the rollovers of the promissory note in favor of the former Oasis shareholders. This was allegedly a breach of Abrahams' fiduciary duty. Once a fiduciary relationship was established and evidence was presented that certain transactions existed that allegedly breached a fiduciary duty, the burden shifted to Abrahams to prove the fairness of the transactions. See *Woodward v. Andersen*, 261 Neb. 980, 627 N.W.2d 742 (2001). Abrahams failed to produce such evidence. The record contains no evidence of the substance of the negotiations or what efforts Abrahams put forth to secure a favorable result for the shareholders vis-a-vis the result he obtained on his personal negotiations. Accordingly, we determine that Abrahams breached his fiduciary duty to disclose at the time he was performing dual negotiations.

[8] Not every breach of a fiduciary duty results in liability for the fiduciary, however. See *In re Louise V. Steinhoefel Trust*, 22 Neb. App. 293, 854 N.W.2d 792 (2014) (concluding breach of fiduciary duty existed, but no damages resulted). It is the duty of the party claiming a breach of fiduciary duty to also establish that he was damaged by such breach. See *id*. The measure of damages is "the loss which the [principal] suffered as a consequence of the [agent's] breach of fiduciary duties." *Mischke v. Mischke*, 253 Neb. 439, 448, 571 N.W.2d 248, 256 (1997).

Upon our de novo review, we find the record wholly lacking in evidence to support a finding that the negotiation of the promissory note would have resulted in a more favorable outcome for the shareholders had Abrahams disclosed his agreements. Both Qualsett and Smith testified that Abrahams served as the lead negotiator because of his prior employment with JuriSearch and resultant knowledge of its internal workings. According to the testimony, before the attorneys in fact agreed to each amendment, Qualsett, Abrahams, and Smith met with Oasis' attorney to discuss their options. Each time the parties determined it was better to roll over the note than take back the Oasis stock. They each agreed their options were limited.

In his testimony, Qualsett implies that he was able to obtain more favorable terms when he negotiated the note in 2007. He points out that he was able to obtain a $100,000 principal payment, whereas Abrahams was able only to increase the interest rate. But without information on JuriSearch's financial situation at the time Qualsett negotiated in 2007 as compared to the time periods during which Abrahams negotiated, we are unable to conclude this was a result of a

lack of effort on the part of Abrahams. The record discloses that as of late 2001, JuriSearch was considering bankruptcy and had an immediate need for cash. However, we do not know how its financial situation progressed. We can glean from the amendments to Abrahams' noncompete agreement that he was never able to improve the terms of his own agreement; the amendments extended the dates of payments, lowered the amount of the monthly payments, and set the interest rate for delinquent payments at 10 percent, which was lower than the rate included in the original agreement.

We further note that JuriSearch defaulted on Abrahams' noncompete agreement prior to any default on the promissory note. Moreover, it appears that JuriSearch consistently made the monthly interest payments to the former shareholders, even when it had stopped payment on the noncompete agreement. Therefore, there is no evidence that the former Oasis shareholders suffered loss because Abrahams negotiated the rollover of their promissory note without disclosing that he was also negotiating JuriSearch's default on the noncompete agreement. See *Mischke v. Mischke*, 253 Neb. 439, 571 N.W.2d 248 (1997).

[9] Qualsett argues that the correct measure of damages is any funds Abrahams obtained from the noncompete agreement. We disagree. Although "'"[a]n agent or other fiduciary who deals with the subject-matter of the agency so as to make a profit for himself will be held to account in equity as trustee for all profits and advantages acquired by him in such dealings,"'" *id.* at 447, 571 N.W.2d at 255-56, this point of law comes from cases in which fiduciaries profit beyond the value of their wrongfully obtained agent property and in which the agent is therefore entitled to the profits. For example, in *ProData Computer Servs. v. Ponec*, 256 Neb. 228, 590 N.W.2d 176 (1999), a company's financial officer converted over $87,000 of company funds and deposited them into personal investment accounts. The Nebraska Supreme Court approved a constructive trust over the investment accounts because the officer owed personal profits from his breach of fiduciary duty to the principal. *Id.* Similarly, in *Mischke v. Mischke, supra*, the Nebraska Supreme Court held that a personal representative of an estate who acquired estate assets at a discount and then sold them at a profit would be liable to the estate for all profits realized from the sale, even those profits beyond the appraised value of the items improperly acquired.

This case is distinguishable because there is no evidence that Abrahams made a profit for himself in negotiating a rollover of his noncompete agreement at the same time as he negotiated the Oasis promissory note rollovers. See *ProData Computer Servs. v. Ponec, supra*. As discussed above, Qualsett did not satisfy his burden to show that Abrahams breached his fiduciary duty by not disclosing his noncompete agreement at the time he entered into it. Rather, we determine that the potential breach of fiduciary duty occurred at the time of the undisclosed simultaneous rollover negotiations. Therefore, the question on the issue of damages is not whether Abrahams profited from the noncompete agreement, but whether he profited from the renegotiations of his noncompete agreement between 2003 and 2006 when he was also negotiating on behalf of the former Oasis shareholders. Given that Abrahams negotiated a reduction of the interest rates he was owed on the noncompete agreement and an extension of the time period to pay him, there is no evidence that he profited at all during these renegotiations, much less at the former shareholders' expense. This is distinguishable from the constructive trust cases discussed above, where the agent gained profit beyond the value of the improperly converted property such that a

constructive trust over the profit was necessary to prevent unjust enrichment of the agent. See *ProData Computer Servs. v. Ponec, supra*. Because there is no evidence of unjust enrichment or evidence that the Oasis shareholders suffered a loss because of Abrahams' negotiations, we find this case distinguishable and Qualsett's theory of damages inapplicable.

We therefore agree with the district court that Qualsett failed to prove that any breach of fiduciary duty by Abrahams resulted in damages to the former Oasis shareholders. As a result, Qualsett's affirmative defense of recoupment must fail.

*Statute of Limitations--Motion for Summary Judgment.*

Qualsett additionally assigns that the district court erred in finding in its order granting Abrahams' motion for summary judgment that the statute of limitations barred his claim against Abrahams. Specifically, Qualsett argues that a genuine issue of material fact exists as to when he discovered Abrahams' alleged fraud for purposes of the discovery rule.

However, Qualsett's complaint and affirmative defense were both based upon a claim of breach of fiduciary duty. The allegations supporting his defense of recoupment mirrored those pled in the original complaint in support of his claim for breach of fiduciary duty. Because we have determined he failed to prove causation on his breach of fiduciary duty claim following a trial involving that issue, it is not necessary to address whether the trial court erred in finding the claim was barred by the statute of limitations. See *Hara v. Reichert*, 287 Neb. 577, 581, 843 N.W.2d 812, 816 (2014) ("[i]ssue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate"). Therefore, we do not reach analysis on the statute of limitations issue and we affirm the judgment of the district court.

## CONCLUSION

Because we find, following a de novo review of the record, that Qualsett failed to prove the former Oasis shareholders were damaged as a result of Abrahams' alleged fraud, we affirm the trial court's order granting Abrahams' counterclaim. Since a judgment in favor of Abrahams on the merits of an alleged breach of fiduciary duty is supported by the record, we need not reach the issue of summary judgment.

AFFIRMED.